JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

5:17-CV-3895

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

17 3895

## I. (a) PLAINTIFFS

Zachary Lutz

**DEFENDANTS**

Rakuten, Inc., Rakuten Baseball, Inc., Hiroshi Mikitani

**(b)** County of Residence of First Listed Plaintiff   Berks County, PA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Tokyo, Japan
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Kenneth A. Jacobsen, JACOBSEN LAW OFFICES LLC, 5 East Rose Valley Road, Wallingford, PA 19086 (215) 204-7215

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

❐ 1   U.S. Government
       Plaintiff

❐ 3   Federal Question
       *(U.S. Government Not a Party)*

❐ 2   U.S. Government
       Defendant

☒ 4   Diversity
       *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                      *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ❐ 1 | Incorporated *or* Principal Place of Business In This State | ❐ 4 | ❐ 4 |
| Citizen of Another State | ❐ 2 | ❐ 2 | Incorporated *and* Principal Place of Business In Another State | ❐ 5 | ❐ 5 |
| Citizen or Subject of a Foreign Country | ❐ 3 | ☒ 3 | Foreign Nation | ❐ 6 | ❐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ❐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ❐ 625 Drug Related Seizure of Property 21 USC 881 | ❐ 422 Appeal 28 USC 158 | ❐ 375 False Claims Act |
| ❐ 120 Marine | ❐ 310 Airplane | ❐ 365 Personal Injury - Product Liability | ❐ 690 Other | ❐ 423 Withdrawal 28 USC 157 | ❐ 376 Qui Tam (31 USC 3729(a)) |
| ❐ 130 Miller Act | ❐ 315 Airplane Product Liability | ❐ 367 Health Care / Pharmaceutical | | | ❐ 400 State Reapportionment |
| ❐ 140 Negotiable Instrument | ❐ 320 Assault, Libel & Slander | Personal Injury | | **PROPERTY RIGHTS** | ❐ 410 Antitrust |
| ❐ 150 Recovery of Overpayment & Enforcement of Judgment | ❐ 330 Federal Employers' Liability | Product Liability | | ❐ 820 Copyrights | ❐ 430 Banks and Banking |
| ❐ 151 Medicare Act | ❐ 340 Marine | ❐ 368 Asbestos Personal Injury Product Liability | | ❐ 830 Patent | ❐ 450 Commerce |
| ❐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ❐ 345 Marine Product Liability | | | ❐ 835 Patent - Abbreviated New Drug Application | ❐ 460 Deportation |
| | | | | ❐ 840 Trademark | ❐ 470 Racketeer Influenced and Corrupt Organizations |
| ❐ 153 Recovery of Overpayment of Veteran's Benefits | ❐ 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ❐ 480 Consumer Credit |
| ❐ 160 Stockholders' Suits | ❐ 355 Motor Vehicle Product Liability | ☒ 370 Other Fraud | ❐ 710 Fair Labor Standards Act | ❐ 861 HIA (1395ff) | ❐ 490 Cable/Sat TV |
| ❐ 190 Other Contract | ❐ 360 Other Personal Injury | ❐ 371 Truth in Lending | ❐ 720 Labor/Management Relations | ❐ 862 Black Lung (923) | ❐ 850 Securities/Commodities/ Exchange |
| ❐ 195 Contract Product Liability | ❐ 362 Personal Injury - Medical Malpractice | ❐ 380 Other Personal Property Damage | ❐ 740 Railway Labor Act | ❐ 863 DIWC/DIWW (405(g)) | ❐ 890 Other Statutory Actions |
| ❐ 196 Franchise | | ❐ 385 Property Damage Product Liability | ❐ 751 Family and Medical Leave Act | ❐ 864 SSID Title XVI | ❐ 891 Agricultural Acts |
| | | | | ❐ 865 RSI (405(g)) | ❐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ❐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ❐ 895 Freedom of Information Act |
| ❐ 210 Land Condemnation | ❐ 440 Other Civil Rights | **Habeas Corpus:** | ❐ 791 Employee Retirement Income Security Act | ❐ 870 Taxes (U.S. Plaintiff or Defendant) | ❐ 896 Arbitration |
| ❐ 220 Foreclosure | ❐ 441 Voting | ❐ 463 Alien Detainee | | ❐ 871 IRS—Third Party 26 USC 7609 | ❐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ❐ 230 Rent Lease & Ejectment | ❐ 442 Employment | ❐ 510 Motions to Vacate Sentence | | | |
| ❐ 240 Torts to Land | ❐ 443 Housing/ Accommodations | ❐ 530 General | | | ❐ 950 Constitutionality of State Statutes |
| ❐ 245 Tort Product Liability | ❐ 445 Amer. w/Disabilities - Employment | ❐ 535 Death Penalty | **IMMIGRATION** | | |
| ❐ 290 All Other Real Property | ❐ 446 Amer. w/Disabilities - Other | **Other:** | ❐ 462 Naturalization Application | | |
| | ❐ 448 Education | ❐ 540 Mandamus & Other | ❐ 465 Other Immigration Actions | | |
| | | ❐ 550 Civil Rights | | | |
| | | ❐ 555 Prison Condition | | | |
| | | ❐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original
     Proceeding

❐ 2 Removed from
     State Court

❐ 3 Remanded from
     Appellate Court

❐ 4 Reinstated or
     Reopened

❐ 5 Transferred from
     Another District
     *(specify)*

❐ 6 Multidistrict
     Litigation -
     Transfer

❐ 8 Multidistrict
     Litigation -
     Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. Section 1332(a)(1)

Brief description of cause:
Fraud, Negligence and Promissory Estoppel in Employment Relationship

## VII. REQUESTED IN COMPLAINT:

❐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes   ❐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE
08/30/2017

SIGNATURE OF ATTORNEY OF RECORD
*Kenneth Jacobsen*

AUG 30 2017

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

**UNITED STATES DISTRICT COURT**  17  3895

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: 3281 Gehman Road, Barto, Berks Count, PA 19054

Address of Defendant: 1-14-1 Tanagawa, Setagaya, Tokyo Japan

Place of Accident, Incident or Transaction: Pottstown Montgomery County, PA; Los Angeles, Cal; Tokyo, Japan
*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))                    Yes☐  No☒

Does this case involve multidistrict litigation possibilities?                                Yes☐  No☒
*RELATED CASE, IF ANY:*
Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
Yes☐  No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
Yes☐  No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
Yes☐  No☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
Yes☐  No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A.  *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
(Please specify) _____

B.  *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☒ All other Diversity Cases    Fraud
(Please specify) Promissory Estoppel

**ARBITRATION CERTIFICATION**
*(Check Appropriate Category)*

I, Kenneth A. Jacobsen, counsel of record do hereby certify:
☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;
☐ Relief other than monetary damages is sought.

DATE: 8/30/17 _____ Attorney-at-Law        31208  Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

AUG 30 2017

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 8/30/17 _____ Attorney-at-Law        31208  Attorney I.D.#

CIV. 609 (5/2012)



**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

Zachary Lutz

v.

Rakuten, Inc.
Rakuten Baseball, Inc.
Hiroshi Mikitani

CIVIL ACTION

**17    3895**

NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.  ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
and Human Services denying plaintiff Social Security Benefits.  ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
exposure to asbestos.  ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
commonly referred to as complex and that need special or intense management by
the court. (See reverse side of this form for a detailed explanation of special
management cases.)

(f) Standard Management – Cases that do not fall into any one of the other tracks.  (X)

8/30/17    Kenneth A. Jacobsen    Plaintiff
**Date**    **Attorney-at-law**    **Attorney for**

(215) 204-7215    (610) 566-7940    Jacobsenlaw@aol.com
**Telephone**    **FAX Number**    **E-Mail Address**

(Civ. 660) 10/02

AUG 30 2017



**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLANIA**

| | | |
|---|---|---|
| ZACHARY LUTZ, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. **17   3895** |
| | : | |
| RAKUTEN, INC., | : | |
| RAKUTEN BASEBALL, INC. and | : | |
| HIROSHI MIKITANI, | : | |
| | : | |
| Defendants. | : | |

## COMPLAINT

Plaintiff Zachary Lutz ("Plaintiff" or "Lutz"), by and for his Complaint against

Defendants, alleges the following upon information and belief, except as to the facts and

allegations relating to Plaintiff, which are alleged on personal knowledge: **FILED**

**AUG 3 0 2017**

### I. NATURE OF ACTION

KATE BARKMAN, Clerk
By_____Dep. Clerk

1. This action seeks maximum monetary relief, including compensatory and punitive

damages, against Defendants for their false and broken promises and deceptive acts and practices

that derailed Plaintiff's career as a professional baseball player. Plaintiff is a former U.S.

professional baseball player who signed a contract to play for Defendants' professional baseball

team in Japan, the Rakuten Golden Eagles, for the 2014 baseball season. During extensive

negotiations for a new contract for the 2015 season and beyond, Defendants repeatedly made

promises to Plaintiff, both directly and through Plaintiff's duly authorized agents in the United

States, that Defendants would enter into a new contract with Plaintiff at specified terms—terms

agreed upon by all parties and embodied in a written contract drafted and approved by

Defendants and signed by Plaintiff the day after he received it from Defendants. However,

1

instead of signing the contract that they had negotiated over a period of three months and embodied in a written "final agreement" approved by their own lawyers, Defendants reneged on its terms and rejected their own agreement. During this entire period, Defendants maintained Plaintiff on their "Reserve List," preventing other professional baseball teams from contacting Plaintiff about his services, and similarly prohibiting Plaintiff from negotiating with any other professional baseball team worldwide. Defendants did not remove Plaintiff from their "Reserve List" until January 5, 2015, weeks after they had repudiated the contract with Plaintiff and too late for Plaintiff to find placement with another team in Japan. As a result, Plaintiff was forced under severe time pressures to seek playing opportunities in other countries, signing a contract with a team in South Korea for substantially less compensation and benefits than that provided in Defendants' "final agreement" tendered by Defendants and signed by Plaintiff, while also depriving Plaintiff of opportunities to negotiate alternative, longer term playing opportunities with other teams in Japan.

## II. THE PARTIES

2. Plaintiff Zachary Lutz ("Plaintiff" or "Lutz") is a citizen and domiciliary of the United States, residing at 3281 Gehman Road, Barto, Berks County, Pennsylvania 19054 and employed full time in Broomall, Delaware County, Pennsylvania.

3. Plaintiff grew up in this District, graduating from Governor Mifflin High School in Shillington, Berks County, PA in 2004, and attending Alvernia College in Reading, Berks County, PA from 2005-2007, where he played Division III varsity baseball. During each of his three years at Alvernia, Lutz was named a first team All American and in 2007 was named the

2

D3.com National Player of the Year.

4. In 2007, Lutz realized his dream of playing professional baseball. Drafted by the New York Mets in the fifth round of the Major League Baseball ("MLB") draft, Plaintiff played in that organization for the next eight years, making his MLB debut with the Mets in 2012.

5. Defendant Rakuten, Inc. is one of the world's largest international e-commerce and internet services companies. Incorporated in Japan and headquartered at 1-14-1 Tamagawa, Setagaya-ku, Tokyo, Japan 158-0094 with offices throughout the world, including the United States, Defendant Rakuten, Inc., through its extensive divisions and consolidated subsidiaries based in 29 countries, provides online retail services, sporting events and other services and products worldwide to billions of customers, netting hundreds of millions of dollars in profits annually. Defendant Rakuten, Inc. has significant contacts in Pennsylvania by regularly conducting and soliciting business in Pennsylvania, engaging in other continuous business activities here, and deriving substantial revenue from goods sold and services provided to Pennsylvania residents, including those in this District.

6. Among Rakuten, Inc.'s extensive holdings and business operations in the United States are such companies as Ebates Inc., VIKI Inc., LinkShare Corporation and capital investments in the ride-sharing service provider Lyft, Inc. and the social network Pininterest, Inc., among other companies.

7. In order to service its vast business operations in the United States and globally, and to promote and develop those businesses and brands both in the United States and abroad, Defendant Rakuten, Inc. has established technology centers and institutes in Boston, New York, San Francisco and other cities in the U.S. focused on research and development in advanced internet technologies to further its business activities.

3

8. Indeed, Rakuten, Inc.'s business operations and brands in the United States are so extensive that in 2012, it completed a two-year transition project designating English as its official corporate language globally.

9. Defendant Rakuten, Inc.'s website boasts of its extensive global business holdings under the broad name "Rakuten Group" and the integration of those various businesses into a single integrated enterprise which it labels the Rakuten "ecosystem":

> "We have since grown to offer services across finance, sports and entertainment and more. We've partnered with businesses around the world that share the same values as us. Now, we're bringing these diverse elements together in one ecosystem, united under the Rakuten umbrella."

10. Rakuten, Inc. lists the "Rakuten Group Services in the Americas" on its website and the headquarters of its U.S. operations at 800 Concar Drive, San Mateo, California, noting that its U.S. operations "are a division of Rakuten, Inc. (4755: TOKYO), one of the world's leading Internet service companies."

11. While identifying the various businesses in the United States that are part of the unified Rakuten Group "ecosystem," that website links back directly to the website for Defendant Rakuten, Inc. and includes links to the "CEO Message," "Corporate Philosophy," "Our Brand Story," "Corporate Governance," "Management Team" and other detailed company information about Defendant Rakuten, Inc.

12. Defendant Rakuten, Inc. further highlights on its website the common, integrated systems of the Rakuten Group for all of the businesses in its "ecosystem":

> "At the same time, development and design of common group platform functions such as Rakuten IDs, points, and checkout payment will continue to be managed by a group-wide team, in order to further enrich the customer benefits offered by the Rakuten Ecosystem."

4

13. Defendant Rakuten, Inc. and its consolidated businesses, including specifically its sports operations such as the Rakuten Golden Eagles, highlight this unified, integrated "ecosystem" in their annual reports and in other Rakuten Group business publications:

## Rakuten Group Integration

## Rakuten Eco-system Integration



**One-stop access to a variety of internet services**

Rakuten provides one-stop access to a wide range of internet services. Our member database serves as the foundation for an enhanced marketing strategy based on the organic linkage of all Rakuten Group services, including e-commerce, travel, e-money and financial services, under the Rakuten brand. We call this the "Rakuten Eco-system."

5

14. To further "unify" its various businesses in its integrated "ecosystem" under the Rakuten umbrella," Defendant Rakuten, Inc. changed its logo, which appears in websites for all of its businesses, together with links to its company information:

**⊕Rakuten**

"This year, we're bringing our 70+ businesses into the Rakuten ecosystem and unifying them."

15. Consistent with this corporate unification, a search of any website for any of the Rakuten Group's business operations globally links to the website of Defendant Rakuten, Inc. and includes a statement from Rakuten founder, Chairman and Chief Executive Officer, Defendant Hiroshi Mikitani ("Mikitani")

16. Consistent with the integrated nature of Defendant Rakuten, Inc.'s multiple business operations in the United States and abroad, Rakuten Inc.'s employees have the same e-mail address "@mail.rakuten.com" whether working in the home office, at the Rakuten Golden Eagles baseball team or at another division of the company. *See* Exhibit 1 attached hereto and incorporated herein by reference.

17. Expanding the global reach of the unified Rakuten brand—and, in particular, in the sports industry--even further, Defendant Rakuten, Inc. recently signed an endorsement deal with the FC Barcelona professional soccer team, agreeing to pay the club $ 60 million annually for four years to display the Rakuten Group name and logo on Barcelona team jerseys:

6



Rakuten's unified global "ecosystem" was on prominent display on July 30, 2017 during an exhibition game in Miami, Florida against Real Madrid. So while cheating Plaintiff Lutz out of hundreds of thousands of dollars in promised compensation and deceiving Plaintiff to this day about the reasons for its actions, the Rakuten Group continues to expand and promote its unified "ecosystem" through one of the most popular sports and with one of the most widely recognized professional sports teams in the world.

18. Defendants Rakuten, Inc. reports all of its financial data and financial performance on a consolidated basis for all of its businesses.

19. Rakuten, Inc.'s various business operations, divisions and consolidated subsidiaries are part of a single integrated enterprise with common ownership and financial interconnections, centralized decision-making and control vested in its Founder, Chairman and Chief Executive Officer, Defendant Mikitani.

20. By virtue of its extensive business operations in the United States, Defendant Rakuten, Inc. and other members of the Rakuten Group have been sued in various courts in the United States, and have similarly invoked the jurisdiction of U.S. courts in litigation which it has commenced against American and foreign companies doing business here.

21. Included among the "Sports Companies" owned and operated by Defendant Rakuten, Inc. is the Japanese professional baseball team, the Rakuten Golden Eagles, a member of the Pacific League of the Japan Professional Baseball Organization.

7

22. Rakuten, Inc. operates the Rakuten Golden Eagles through its consolidated subsidiary, Defendant Rakuten Baseball, Inc., incorporated in Japan and whose principal place of business is located at 2-11-6 Miyagino Miyagino-ku, Sendai Miyagi, Japan 983-0045.

23. Unlike their counterparts in the United States, professional baseball teams in Japan and in other Asian countries are typically owned and operated by large, diversified corporate enterprises such as Defendant Rakuten, Inc. through consolidated and captive subsidiaries such as Defendant Rakuten Baseball, Inc. Such teams, like the Rakuten Golden Eagles, bear the name of their corporate owners and serve as marketing, promotion and advertising vehicles for the corporate enterprise both in Japan and abroad.

24. Defendant Rakuten Baseball, Inc., through its duly authorized employees, agents and representatives, itself regularly transacts business in the United States through mail, telephone and internet communications with U.S professional baseball players and their agents, as it did with Plaintiff Lutz for his 2014 contract and negotiations for a new 2015 contract described more fully below. Among other former U.S. professional baseball players with whom the Rakuten Golden Eagles negotiated contracts to play for the team over the past decade are Andruw Jones, Gaby Sanchez, Jonny Gomes, Kevin Youkilis, Luis Lopez, Gary Rath, Ryan Glynn, Damon Minor, Eric Valent, Andy Tracy, Kevin Hodges, Cedrick Bowers, Matt Skrmetta, Kevin Witt and others.

25. In addition to routinely soliciting, recruiting and contracting with American professional baseball players through communications in this country, Defendant Rakuten Baseball, Inc. also has solicited, recruited and entered into contracts with team mangers, including former Cincinnati Reds and Baltimore Orioles player Marty Brown, who managed the Rakuten Golden Eagles in 2010.

8

26. These negotiations and contractual arrangements with American players and managers involved regular and repeated contacts and communications in the United States by Defendant Rakuten Baseball, Inc., through its duly authorized employees, agents and representatives

27. Defendant Mikitani is the Founder, Chairman and Chief Executive Officer of Rakuten, Inc., whose principal office is located at 1-14-1 Tamagawa, Setagaya-ku, Tokyo, Japan 158-0094. Mikitani oversees and controls all of the business operations and activities of Defendant Ratuken, Inc. and its various divisions and consolidated subsidiaries, including Rakuten Baseball, Inc. and the Rakuten Golden Eagles, of which he is Chairman.

28. Defendant Mikitani is a graduate of the Harvard Business School and a former resident of New Haven, Connecticut and Boston, Massachusetts. A self-professed fan of professional baseball, Defendant Mikitani was personally involved in the establishment of the Rakuten Golden Eagles in 2005 as an expansion team in the Pacific League of the Japan Professional Baseball Organization. Defendant Mikitani also was personally involved in the construction of the Rakuten Golden Eagles Stadium that same year in Sendai, Japan.

29. Mikitani is a "hands on" team owner who visits his team during Spring Training, conducts media interviews for the team both in Japan and in the United States, and participates in decisions involving players, managers and other staff. Mikitani was personally involved in the decisions alleged in this Complaint affecting Plaintiff Lutz and Defendants' decision to reject the 2015 contract that Defendants themselves had negotiated, drafted and sent to Plaintiff Lutz for execution, but later disavowed.

30. Mikitani routinely travels to the United States on behalf of Rakuten, Inc. and its various businesses and consolidated subsidiaries doing business here and abroad.

9

### III. JURISDICTION AND VENUE

31. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) in that this action is between citizens of a state (Pennsylvania) and citizens or subjects of a foreign state (Japan) and the amount in controversy, as alleged in more detail below, exceeds the sum of $ 75,000, exclusive of interest and costs.

32. Venue is appropriate in this District under 28 U.S.C 1391(b)(2) in that many of acts and a substantial part of the events and omissions giving rise to Plaintiff's claims, including e-mail communications, execution and retransmission by Plaintiff of documents forwarded by Defendants, telephone communications and other acts occurred at and from Plaintiff's residence in this District. Furthermore, pursuant 28 U.S.C. § 1391(c)(3), Defendants may be sued in any Judicial District in the United States.

### III. FACTUAL ALLEGATIONS

33. Following his professional baseball career in the United States, Plaintiff pursued an opportunity to continue his career in Japan, signing a contract to play professional baseball for the Rakuten Golden Eagles for the 2014 season (the "2014 Contract"). The term of the 2014 Contract was from June 15, 2014 to November 30, 2014.

34. In September 2014, nearing the end of the 2014 season, Defendants, through their duly authorized agent Akihoto Sasaki ("Sasaki"), Special Assistant to the Rakuten Golden Eagles General Manager, began a series of e-mail and telephone communications with Plaintiff directly and with Plaintiff's agents, Tim Clark ("Clark") and Acey Kohrogi ("Kohrogi") of MVP

Sports Group in Los Angeles, CA, about the terms of a new contract for the 2015 season.
Plaintiff engaged in these discussions and negotiations from his home in Pottstown, Montgomery
County, Pennsylvania.

35. Negotiations over the terms of a new contract continued between and among Plaintiff,
Plaintiff's agents and Rakuten's representatives throughout September and October 2014, with
various proposals and terms, including multi-year extensions, exchanged and discussed by the
parties.

36. Because Plaintiff had sustained a fracture to his thumb while playing for the Rakuten
Golden Eagles during the 2014 season, Defendants sought medical reassurance that Lutz' thumb
had healed and that Plaintiff was physically able to play for the 2015 season.

37. Plaintiff had surgery at the Weill Medical College of Cornell University in New
York, NY to repair his injured thumb, and in letters from his doctors dated October 8, 2014 and
October 22, 2014, provided the medical information to Defendants that they had requested to
continue negotiations with Plaintiff over the terms of a new contract for the 2015 season. Those
letters are attached hereto as Exhibits 2 and 3 and are incorporated herein by reference.

38. Plaintiff also kept Special Assistant Sasaki informed about the progress of his thumb
via text and e-mails from his home in Pennsylvania, writing on October 13, 2014:

> "[E]verything is going great with my thumb....cleaning it every day and there is
> no more swelling. Now looking forward to doing the rehab and getting it back
> 100%"

*See* Exhibit 4 attached hereto and incorporated herein by reference.

39. In response, Sasaki wrote to Lutz, received and read by Plaintiff at his home in
Pennsylvania:

> "Thanks.
> It is good to know everything is going good with your thumb. We have reviewed

11

all of your pics with our doctor.

We believe we can do something for your contract after checking your next X-ray.
As long as all goes well, it won't be any problem."

Sasaki went on a few days later to state:

"We are sure that you will play an important role once your thumb is healed."

Exhibit 4.

40. After sending Defendants the letters from his doctors (Exhibits 2 and 3), Lutz wrote

to Sasaki on October 28, 2014 from his home in Pennsylvania:

"Hopefully, we can now move forward and talk about contract for next season"

*See* Exhibit 5 attached hereto and incorporated herein by reference.

41. In response, Sasaki wrote to Plaintiff on October 31, 2014:

"I had a chance to talk to our team doctor finally.

I believe now all set. We can move forward and talk about your contract.
New proposal will be set for you soon. We have considered giving you a
2-year deal after buying out your current contract.

Please let me know your thoughts on our idea."

Exhibit 5.

42. The communications between Plaintiff from his home in Pennsylvania and

Defendants' agent Sasaki continued via telephone and e-mail, as did communications between

and among Defendants' duly authorized representatives in Japan and Lutz' agents in Los

Angeles, California. For example, in a November 5, 2014 e-mail to Plaintiff's agent Dan Lozano,

("Lozano") the founder of MVP Sports Group in Los Angeles, and to Lutz at his home in

Pennsylvania, Sasaki wrote:

"Hope all is well.

12

> After reviewing all Lutz's medical records and discussing about his contract internally, new offer to him has been concluded for Zach Lutz."

Exhibit 1. Defendants' offer was for two years extending through the 2017 season, with certain options and buyouts. A term sheet reflecting the proposal was attached to Sasaki's e-mail, who asked Lozano and Lutz for feedback on Defendants' "new offer." Exhibit 1.

43. On November 7, 2014, representatives of the Orix Buffaloes, another team in the Pacific League, contacted Plaintiff's agents to express interest in signing Plaintiff to a contract with that team if Lutz did not come to terms on a new agreement with the Rakuten Golden Eagles. However, Plaintiff was still on Defendant's "Reserve List," which prohibited Plaintiff from negotiating with any other professional baseball team worldwide, and similarly prohibited other teams in the Japan Professional Baseball Organization from negotiating a player contract with Plaintiff, either directly or through Plaintiff's agents.

44. On November 27, 2014, following months of negotiations and three days prior to the expiration of the 2014 Contract, the parties agreed on the material terms of a new one year contract for the 2015 season, which provided a guaranteed base salary to Plaintiff of $ 700,000, incentive bonuses totaling $ 900,000, and benefits and expenses similar to those contained in the 2014 Contract. Lutz continued to remain on Defendants' "Reserve List," which prohibited him from becoming a free agent and from negotiating a contract with any other team in the world.

45. On the same day that the parties reached agreement on the material terms of a new contract—Thanksgiving Day in the United States--Defendants' authorized agent and representative Sasaki called Plaintiff at Lutz' residence in Pennsylvania and welcomed Plaintiff back to the team.

46. Over the next week, Sasaki, Plaintiff and Plaintiff's agents exchanged and discussed

13

via telephone and e-mail communications written drafts of the new agreement with language
changes proposed by Defendants' "lawyers."

47. On December 5, 2014, in an e-mail to Sasaki by Plaintiff's agent Kohrogi, Plaintiff
accepted all of the changes proposed by Defendants and agreed to all of the terms and conditions
of the new 2015 contract, writing:

> "Sasaki san
>
> Thank you for all of your efforts in signing Zac.
>
> I think we are done and accept the new language written by your lawyers.
> Please send us a clean copy of this document for Zac to execute.
>
> Thank you again!
>
> Acey"

Exhibit 6 attached hereto and incorporated herein by reference

48. That same day, in response to the e-mails from Plaintiff's agent,

Sasaki sent two e-mails to Kohrogi confirming in writing the "final agreement" between the

parties. Sasaki's first e-mail stated:

> "Acey-san
>
> Thank you for all of your efforts on this deal.
> As we confirmed on last conversation, we will send the clean copy of
> agreement and Japanese uniform player's contract to you and Zach.
>
> Thank you again.
> Hope to see you soon.
>
> Aki"

Following up on his promise, Sasaki wrote in his second e-mail that same day:

> "Acey-san
>
> Sorry for taking so long.

14

> Please see the attached as a clean copy of the **final agreement**.
>
> We will send the original agreement and Japanese uniform contract to your office.
> Thanks.
> Aki"

Exhibit 7 attached hereto and incorporated herein by reference (emphasis added).

49. The "final agreement" expressly and unconditionally acknowledged by Defendants' duly authorized agent and representative Sasaki and sent to both Plaintiff and his agents included the guaranteed base salary of $ 700,000 agreed to by the parties on November 27, 2014; incentive bonuses totaling $ 900,000 for games played, plate appearances, on base percentages and other achievements during the season; and tens of thousands of dollars in benefits and expenses for housing, transportation, meals and lodging on road trips, medical, health and disability insurance virtually identical to those contained in the 2014 Contract, which had by then expired.

50. Plaintiff Lutz received a copy of the new contract directly from Defendants as well as from his agents, signed it at his residence in Pottstown, Pennsylvania, scanned the signature page, and returned it the next day on December 6, 2014. Meanwhile, Defendants continued to maintain Lutz on their "Reserve List," prohibiting him from becoming a free agent and from negotiating with any other professional baseball team in the world.

51. Plaintiff also sent Defendants a letter dated December 9, 2014 from his physical therapist that Defendants had requested, despite their transmission of the "final agreement" drafted by Defendants' "lawyers" and signed by Lutz days earlier. That letter stated:

> "At this time, Mt. Lutz has full functional use of his right thumb, has been cleared for all baseball activities, and he has no restrictions. He has demonstrated the ability to throw and catch a baseball and swing a bat with no difficulties. He has also been able to consistently perform all activities related to his off season

15

training program."

Exhibit 8 attached hereto and incorporated herein by reference

52. Based on the financial security provided by the new contract, Lutz and his wife bought a new house in Berks County, Pennsylvania, his current residence. Critical to that transaction was the $ 700,000 guaranteed base salary promised by Defendants both on November 27, 2014 and explicitly set forth in the written "final agreement" signed by Lutz on December 6, 2014. Because Plaintiff lacked proof of a steady income, the bank that financed the sale and provided the mortgage on Plaintiff's new house placed substantial emphasis and reliance on the $ 700,000 base salary promised and guaranteed by Defendants, as did Plaintiff himself.

53. In a total and unexpected shock and surprise to Plaintiff and his agents, Defendants refused to sign the new contract that had been approved by their own lawyers, had been sent to Plaintiff for signature, and which Lutz had immediately signed and returned to Defendants. Instead, Defendants replaced Sasaki with a new representative, Hiroshi Abei ("Abei'), the Director of Player Development for the Rakuten Golden Eagles, who informed Plaintiff's agent of the change on December 16, 2014. Meanwhile, Defendants continued to keep Lutz on their "Reserve List," prohibiting him from becoming a free agent and negotiating with any other team in the world.

54. The next day, on December 17, 2014, Defendants signed American player Gaby Sanchez to a contract to play for the team.

55. Two days later, on December 19, 2014, Abei called Plaintiff's agent Kohrogi to inform him that Defendants intended to "renegotiate" the financial and other terms of the new contact—the same "final agreement" that Defendants had sent to Lutz and was signed by Plaintiff two weeks earlier. While expressing continued interest in signing Lutz to a contract for

the 2015 season, Abei told Kohrogi that he would be meeting with team owner Defendant Mikitani that day and would "get back" to Kohrogi about Plaintiff's situation. Defendants kept Plaintiff on their "Reserve List," prohibiting Lutz from negotiating a contract with any other team in the world, and other teams in the Japan Professional Baseball Organization from negotiating with him or his agents.

56. On December 20, 2014, Abei informed Kohrogi that he had met with team owner Defendant Mikitani and would call Kohrogi the next day to discuss Plaintiff's status.

57. Instead of calling Plaintiff's agent as promised, Abei instead sent Kohrogi an e-mail on December 24, 2014 stating that Defendants had decided to "cease negotiations related to the 2015 contract between the club and Mr. Lutz." Exhibit 9 attached hereto and incorporated herein by reference

58. Although, in his December 24, 2014 e-mail, Abei promised to remove Plaintiff from Defendants' "Reserve List" "effectively [sic] immediately," Defendants did not remove Plaintiff from their "Reserve List" until January 5, 2015.

59. By then, it was too late. Scrambling to secure income to support his family and pay for his new home, and unable to secure a contract for the 2015 season with a team in Japan on such short notice, Plaintiff signed a contract with the Doosan Bears of the Korean Baseball Organization for a salary of $ 550,000--$150,000 less than his guaranteed base salary under the "final agreement" with Defendants. Plaintiff also lost the incentive bonuses that Defendants had promised in the new contract, the benefits and expenses to which the parties had agreed in the "final agreement," and the ability to play professional baseball in Japan for another club.

17

## FIRST CAUSE OF ACTION
## FRAUD

60. Plaintiff repeats and incorporates by reference the allegations of paragraphs 1 through 59 above as though fully set forth at length herein.

61. Defendant made false statements, representations and omissions of material fact about their intention to sign Plaintiff to a new 2015 player contract and the terms of that "final agreement," and as described in more detail above.

62. Defendants concealed and failed to disclose the fact that they had no intention of signing the new agreement that they themselves had drafted, approved by their "lawyers" and tendered to Plaintiff as the "final agreement" between the parties.

63. Defendants made such false statements, misrepresentations and omissions knowing that Plaintiff would rely to his detriment on those statements, misrepresentations and omissions, which Plaintiff did.

64. Compounding Defendants egregious conduct, Defendants maintained Plaintiff on their "Reserve List" throughout this entire period, prohibiting Lutz and his agents from engaging in any negotiations with any other professional baseball team in the world. Similarly, Defendants knew other teams in the Japan Professional Baseball Organization were prohibited from negotiating with Plaintiff or his agents, as Defendants "Reserve List" is filed with the league office and is known to every club in the Japan Professional Baseball Organization.

65. Defendants' concealed and misrepresented, and to this day continue to conceal and misrepresent, their reasons for rejecting the "final agreement" that they themselves had drafted in consultation with their "lawyers." As recently as July 10, 2017, duly authorized representatives of Defendants wrote:

18

> "Significantly, Rakuten demanded that Lutz submit to Rakuten a medical doctor's certificate proving that Lutz's broken finger was completely recovered, with the obvious premise that Rakuten intended to renew the contract with Lutz, but Lutz never submitted such a certificate."

This statement is not true, as evidenced by the **three** medical certificates provided to Defendants either directly by Lutz or through Plaintiff's duly authorized agents at MVP Sports, including one sent **after** Defendants and their "lawyers" has tendered the "final agreement" for execution by Lutz on December 6, 2014.

66. Defendants' rejection and repudiation of their own contract was a pretext for some other undisclosed agenda. Defendants' motives have been concealed from Plaintiff to this day.

67. Plaintiff justifiably relied on Defendants' false statements, misrepresentations and omissions.

68. Defendants induced Plaintiff to act based on their false statements, misrepresentations and omissions, and Plaintiff did so act, to his detriment.

69. As a direct and proximate result of Defendants' false statements, misrepresentations and omissions, Plaintiff has been damaged in the manner and amounts set forth in this Complaint and to be further demonstrated at trial.

## SECOND CAUSE OF ACTION
## NEGLIGENT MISREPRESENTATION

70. Plaintiff repeats and incorporates by reference the allegations of paragraphs 1 through 69 above as though fully set forth at length herein.

71. Defendants, in their course of dealing with Plaintiff and his duly authorized agents, provided false information to them about the new 2015 contract, their intention to enter into such a contract with Plaintiff, and the terms of such an agreement.

72. Defendants knew that Plaintiff and his duly authorized agents would rely on the information provided by Defendants, and Plaintiff and his agents did so justifiably rely on such statements and omissions.

73. Defendants owed a duty to Plaintiff to ensure that their statements to Plaintiff and to Plaintiff's agents were truthful, accurate and complete.

74. Defendants owed a duty to Plaintiff not to omit or conceal information that was material to Plaintiff's negotiations with Defendants and decision to enter into a new contract with Defendants for the 2015 season and the terms of such an agreement

75. Defendants owed a duty to Plaintiff to exercise reasonable care and competence in communicating truthful, accurate and complete information to Plaintiff.

76. Defendants breached their duty to Plaintiff in that their statements, representations and omissions were false, inaccurate and incomplete.

77. As a direct and proximate result of Defendants' negligent misrepresentations and omissions, Plaintiff has been damaged.

## THIRD CAUSE OF ACTION
## PROMISSORY ESTOPPEL

78. Plaintiff repeats and incorporates by reference the allegations of paragraphs 1 through 77 above as though fully set forth at length herein.

79. Defendants made promises to Plaintiff and to Plaintiff's duly authorized agents about the terms and conditions of the new 2015 contract and their intention to enter into that "final agreement" with Plaintiff.

80. Defendants made such promises knowing that their promises could reasonably be

20

expected to induce action or forbearance on the part of Plaintiff.

81. Plaintiff justifiably relied on Defendants' promises and took action in reliance on such promises, including signing the new 2015 contract, purchasing a new home, and other action. Plaintiff and his duly authorized agents also refrained and were outright prohibited from negotiating with any other team worldwide when Defendants made their promises.

82. As a direct and proximate result of Defendants' promises and Plaintiff's justifiable reliance thereon, and the actions and forbearance undertaken by Plaintiff, Plaintiff has been damaged.

83. Injustice can be avoided only by enforcing the financial terms to which Defendants explicitly agreed in their "final agreement," including but not limited to payment to Plaintiff of the guaranteed base salary of $ 700,000, incentive bonuses of $ 900,000 and other promised benefits.

**WHEREFORE**, Plaintiff demands judgment against Defendants on each of the aforementioned claims, counts and causes of action. Plaintiff requests an award of compensatory damages, punitive damages for Defendants' egregious conduct, and attorneys' fees and expenses, together with interest, costs and such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury for each of the above stated causes of action.

Dated: August 29, 2017                    BY:

KENNETH A. JACOBSEN
**JACOBSEN LAW OFFICES LLC**
5 East Rose Valley Road
Wallingford, PA 19086
(215) 204-7215
Jacobsenlaw@aol.com
*Attorney for Plaintiff Zachary Lutz*

21

# EXHIBIT 1

never commented on my proposal. Can you please
share your thoughts with me?
Have a great day,
Zach

Sent from my iPhone

On Nov 5, 2014, at 12:37 AM, Sasaki, Akihito | Aki |
PROSB <akihito.sasaki@mail.rakuten.com> wrote:

Mr. Dan Lazano
Mr. Zach Lutz

Hope all is well.

After reviewing all Lutz's medical records and discussing
about his contract internally, new offer for him has been
concluded for Zach Lutz.

We would like to make a new offer for your client, Zach Lutz,
for 2015-2016, instead of picking up the club option.
So now, we would like to make a new proposal, Two-Year
Contract with the Club Option covering 2017 after paying its
buyout, $50,000.

Please see attached document.
After you discuss with your client, please let us know about
our new offer.

Best regards,
Aki Sasaki

_____

_____

RAKUTEN BASEBALL INC. Tohoku Rakuten Golden
Eagles
株式会社楽天野球団/チーム戦略室　室長

# EXHIBIT 2



**ANDREW J. WEILAND, MD**
Professor of Orthopaedic And Plastic Surgery
Weill Medical College of Cornell University

Surgery of the Hand, Wrist, Elbow and Shoulder

October 08, 2014

ZACH LUTZ

Mr. Lutz is two weeks status post CRPP for a nonunion of his right first proximal phalanx. He has done well and has maintained the pins. The thumb spica splint came off today.

On physical examination, his sutures were removed today and Steri-Strips were applied. His pin sites look excellent. He is neurovascularly intact distally.

Radiographs reveal a well-positioned hardware with good reduction and maintenance of the fracture.

Assessment and Plan: Mr. Lutz is two weeks status post CRPP for a nonunion of his right first proximal phalanx. He has done well. He will follow-up in two weeks and at that time, we will probably pull the pins after new x-rays. He was given pin care supplies.

The patient was seen and examined with Dr. Weiland.

Benjamin Bjerke-Kroll, MD for
Andrew J. Weiland, MD

BBK:lm

hss.edu      OFFICE LOCATION      MAILING ADDRESS    TEL 212 606 1575    weilanda@hss.edu
525 East 71st Street, 2nd Floor    535 East 70th Street    FAX 212 535 0426
New York, NY 10021    New York, NY 10021

# EXHIBIT 3



**ANDREW J. WEILAND, MD**
Professor of Orthopaedic And Plastic Surgery
Weill Medical College of Cornell University

Surgery of the Hand, Wrist, Elbow and Shoulder

October 22, 2014

ZACH LUTZ

Mr. Lutz returns now four weeks status post ORIF of his intraarticular fracture of his right thumb IP joint.

X-rays today compared with the films taken three weeks ago show the fracture is completely healed and the pins are removed.

He can start therapy and resume all of his normal workouts.

I will see him back only if he has any problems.

Andrew J. Weiland, MD

AJW:lm

hss.edu          OFFICE LOCATION          MAILING ADDRESS          TEL  212 606 1575          wellanda@hss.edu
                  525 East 71st Street, 2nd Floor   535 East 70th Street     FAX  212 535 0426
                  New York, NY 10021            New York, NY 10021

# EXHIBIT 4

7/13/2017

AOL Mail (66)



●●○○○ AT&T 🀄                    8:08 AM                    95% ⬛

**‹ Search**        19 Messages        ‹   ›
Zach Lutz Doctor visit

## Akihito | Aki | PROSB Sasaki   10/17/14   

**To: Zach Lutz**                      Details

Hi Zach
It sounds great. It has been prepared smoothly for new
season after new manger was named.
We are sure that you will play an important roll once your
thumb is healed.
Hope we can step forward next action for you soon.

Thanks for keeping in update.
Aki Sasaki

> Hey Aki just wanted to say congrats again on the
> hiring of a new manager! Also, everything is going
> great with my thumb..cleaning it everyday and there is
> no more swelling.  Now looking forward to doing the
> rehab and getting it back to 100%
>
> Sent from my iPhone
>
> On Oct 13, 2014, at 8:54 PM, Sasaki, Akihito | Aki |
> PROSB <akihito.sasaki@mail.rakuten.com> wrote:
>
> Hi Zach
>
> Thanks.
> It is good to know everything is going good with your thumb.
> We have reviewed all of your pics with our doctor.
>
> We believe we can do something for your contract after
> checking your next x-ray.
> As long as it goes well, it won't be any problem.

    

# EXHIBIT 5

●●●○○ AT&T 🔋 ❄️     8:28 AM     ⚹ 95% ▬

‹ Search     **60 Messages**     ‹ ›
Zach Lutz

Zach

Sent from my iPhone

**See More** from Akihito | Aki | PROSB Sasaki     ↰

Found in All Mail Mailbox     🗁

## Akihito | Aki | PROSB Sasaki   10/31/14
**To:** Zach Lutz     Details     AP

Sorry for my late response to you.
I had a chance to talk to our team doctor finally.

I believe now all set. We can move forward and talk about
your contract.
New proposal will be set for you soon. We have considered
giving you 2-year deal after buying out your current contract.

Please let me know your thought on our idea.

Regards,
Aki Sasaki

Hopefully we can now move forward and talk about
contract for next season.
Thanks,
Zach

Sent from my iPhone

On Oct 28, 2014, at 9:42 PM, Sasaki, Akihito | Aki |

⚑     🗁     🗑     ↰     ✎

# EXHIBIT 6

```
-----Original Message-----
From: Acey Kohrogi
[mailto:aceyk@mvpsportsgroup.com]
Sent: Friday, December 05, 2014 2:14 PM
To: Sasaki, Akihito | Aki | PROSB
Subject: Re: Zac Lutz
```

Sasaki san,

Thank you for all your efforts in signing
Zac.

I think we are done and we accept the new
language written by your
lawyers. please send us clean copy of this
agreement for Zac to
execute.

Thank you again!

Acey

# EXHIBIT 7

From: "Sasaki, Akihito | Aki | PROSB" <akihito.sasaki@mail.rakuten.com>
Date: December 5, 2014 at 9:24:00 PM CST
To: Acey Kohrogi <aceyk@mvpsportsgroup.com>
Subject: RE: Zac Lutz

Acey-san

Sorry for taking so long.
Please see attached document as a clean copy of the final agreement.

We will send the original agreement and Japanese uniform contract to your office.
Thanks,
Aki
-----Original Message-----
From: Acey Kohrogi
[mailto:aceyk@mvpsportsgroup.com]
Sent: Saturday, December 06, 2014 4:58 AM
To: Sasaki, Akihito | Aki | PROSB
Subject: Re: Zac Lutz

Sasaki san,


Could you email us a clean copy of the final
agreement please. Also, if you could send us the
original and uniform player's contract to our
office in LA. We will make sure Zac signs
everything for you.

Thank you,

Acey

    --- the forwarded message follows ---


On Fri, 5 Dec 2014 15:37:19 +0000
  "Sasaki, Akihito | Aki | PROSB"
<akihito.sasaki@mail.rakuten.com> wrote:
Acey-san

Thank you for all of your efforts for this
deal.
As we confirmed on last conversation, we will
send the clean copy of
agreement and Japanese uniform player's

contract to you and Zach.

Thank you again.
Hope to see you soon.

Aki

# EXHIBIT 8



**KEYSTONE
REHABILITATION
SYSTEMS®**
A Physiotherapy Associates Company

1100 Grosser Road
Suite B
Gilbertsville, PA 19525
Phone: 610/369-0030
Telefax: 610/369-0070

December 9, 2014

To Whom It May Concern,

I had the pleasure of providing physical therapy to Zachary Lutz, DOB 6/3/1986, starting on October 27, 2014.  He was discharged on November 26, 2014.  He received physical therapy to his Right Thumb after he had surgery to repair a fracture he sustained while playing baseball.

At this time, Mr. Lutz has full functional use of his right thumb, has been cleared for all baseball activities, and he has no restrictions. He has demonstrated the ability to throw and catch a baseball and swing a baseball bat with no difficulties. He has also been able to consistently perform all activities related to his off season training program.

If you have any questions related to this manner, please feel free to call me at 610.369.0030 or email me at kelly.caras@physiocorp.com.

Sincerely,


Kelly D. Grim Caras, PT
Clinic Director