# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ZACHARY LUTZ,<br><br>    Plaintiff,<br><br>  v.<br><br>RAKUTEN, INC., RAKUTEN BASEBALL,<br>INC. and HIROSHI MIKITANI,<br><br>    Defendants. | Civil Action No. 17-03895<br><br>[ELECTRONICALLY FILED] |

**MEMORANDUM IN SUPPORT OF DEFENDANTS RAKUTEN BASEBALL, INC.'S, RAKUTEN, INC.'S, AND HIROSHI MIKITANI'S MOTIONS TO:**

  **(1)  DISMISS FOR LACK OF PERSONAL JURISDICTION UNDER RULE 12(b)(2);**

  **(2)  DISMISS OR STAY PENDING RESOLUTION OF A PARALLEL PROCEEDING IN JAPAN AND ON GROUNDS OF *FORUM NON CONVENIENS*; AND**

  **(3)  DISMISS FOR FAILURE TO STATE A CLAIM UNDER RULE 12(b)(6)**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................................................1

II.     BACKGROUND ....................................................................................................2

III.    ARGUMENT ..........................................................................................................5

        A.      Defendants Are Not Subject To Personal Jurisdiction In Pennsylvania .................5

                1.      There Is No General Jurisdiction Over Any Of The Defendants ................6

                        a.      There Is No General Jurisdiction Over Rakuten Baseball ..............7

                        b.      There Is No General Jurisdiction Over Rakuten, Inc. .....................7

                        c.      There Is No General Jurisdiction Over Mikitani ............................8

                2.      There Is No Specific Jurisdiction Over Any Of The Defendants .............8

                        a.      There Is No Specific Jurisdiction Over Rakuten, Inc. ....................9

                        b.      There Is No Specific Jurisdiction Over Mikitani ..........................11

                        c.      There Is No Specific Jurisdiction Over Rakuten Baseball,
                                Inc. ....................................................................................................11

                        d.      Even If Lutz Could Establish Specific Jurisdiction Over
                                The Defendants, The Exercise Of Jurisdiction In This Case
                                Is Unreasonable ................................................................................12

        B.      The Court Should Dismiss Or Stay This Action On Grounds Of Forum
                Non Conveniens ..................................................................................................15

                1.      Japanese Courts Provide A Suitable Alternative Forum .........................15

                2.      The Court Should Dismiss Or Stay This Action Pending
                        Resolution Of A Parallel Proceeding In Japan .......................................16

                3.      Lutz's Choice Of Forum ..........................................................................16

                4.      Private Interest Factors Favor Resolution Of This Case In Japan ...........17

                        a.      Access To Sources Of Proof ..........................................................17

                        b.      Compulsory Process And Cost Of Obtaining Witnesses ...............18

                        c.      Other Practical Problems ................................................................19

                5.      Public Interest Factors Favor Resolution Of This Case In Japan ............19

        C.      Lutz's Complaint Should Be Dismissed Under Rule 12(b)(6) For Failure
                To State A Claim ...............................................................................................21

                1.      Lutz's Fraud And Negligent Misrepresentation Claims Are Barred
                        By The Statute Of Limitations ................................................................21

                2.      Lutz's Fraud Claim Also Fails Because It Is Not Pleaded With
                        Specificity ................................................................................................22

3.      Lutz's Negligent Misrepresentation Claim Also Fails Because It
        Cannot Be Based On A False Promise ......................................................23

4.      Lutz's Promissory Estoppel Claim Fails To Allege An Express
        Promise And Reasonable Reliance ..........................................................24

IV.    CONCLUSION..................................................................................................................25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<u>Cases</u>

American Tel. & Tel. Co. v. Compagnie Bruxelles Lambert
    94 F.3d 586 (9th Cir. 1996) ...................................................................10

Arch v. Am. Tobacco Co.
    984 F. Supp. 830 (E.D. Pa. 1997) .........................................................10

Arlington Indus., Inc. v. Elec. Custom Distributors, Inc.
    817 F. Supp. 2d 473 (M.D. Pa. 2011) .....................................................7

Bell Atl. Corp. v. Twombly
    550 U.S. 544 (2007)...............................................................................21

Bennett v. Itochu Int'l, Inc.
    682 F. Supp. 2d 469 (E.D. Pa. 2010) ....................................................23

Buck v. Hampton Twp. Sch. Dist.
    452 F.3d 256 (3d Cir. 2006).................................................................21

Burger King Corp. v. Rudzewicz
    471 U.S. 462 (1985).....................................................................9, 12, 13

C & K Petroleum Prods., Inc., v. Equibank
    839 F.2d 188 (3d Cir. 1988).................................................................24

Clark v. Matsushita Elec. Indus. Co.
    811 F. Supp. 1061 (M.D. Pa. 1993) ......................................................10

Commc'ns, LLC v. AMResorts, L.P.
    No. CV 16-5575, 2017 WL 4012687 (E.D. Pa. Sept. 11, 2017) ...........16

Conti v. Pneumatic Products Corp.
    977 F.2d 978 (6th Cir. 1992) ................................................................14

Crouse v. Cyclops Industries
    745 A.2d 606 (Pa. 2000) .......................................................................24

Dahl v. United Techs. Corp.
    632 F.2d 1027 (3d Cir. 1980)................................................................19

Daimler AG v. Bauman
    134 S. Ct. 746 (2014)........................................................................6, 7, 9

Delta Airlines, Inc. v. Chimet, S.p.A.
    No. CIV.A. 07-2898, 2008 WL 5336720 (E.D. Pa. Dec. 19, 2008), aff'd sub
    nom. Delta Air Lines, Inc. v. Chimet, S.p.A., 619 F.3d 288 (3d Cir. 2010) ............................17

*Dinterman v. Nationwide Mut. Ins. Co.*
   26 F. Supp. 2d 747 (E.D. Pa. 1998) ................................................................18

*Drelles v. Mfr. Life Ins. Co.*
   881 A.2d 822 (Pa. Super. Ct. 2005) ...............................................................22

*In re Enter. Rent-A-Car Wage & Hour Employment Practices Litig.*
   735 F. Supp. 2d 277 (W.D. Pa. 2010), *aff'd*, 683 F.3d 462 (3d Cir. 2012) ............................10

*Goodyear Dunlop Tires Operations, S.A. v. Brown*
   564 U.S. 915 (2011) .................................................................................6, 7

*Hammersmith v. TIG Ins. Co.*
   480 F.3d 220 (3d Cir. 2007) ..........................................................................20

*Helicopteros Nacionales de Colombia, S.A. v. Hall*
   466 U.S. 408 (1984) ....................................................................................11

*Holland America Line Inc. v. Wärtsilä North America, Inc.*
   485 F.3d 450 (9th Cir. 2007) ...........................................................................9

*Hunt v. Erie Ins. Group*
   728 F.2d 1244 (9th Cir. 1984) ........................................................................12

*Institutional Inv'rs Grp. v. Avaya, Inc.*
   564 F.3d 242 (3d Cir. 2009) ...........................................................................22

*Keeton v. Hustler Magazine, Inc.*
   465 U.S. 770 (1984) ......................................................................................9

*MDNet, Inc. v. Pharmacia Corp.*
   147 Fed. App'x 239 (3d Cir. 2005) ...................................................................25

*Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino*
   960 F.2d 1217 (3d Cir. 1992) ...........................................................................9

*Mesalic v. Fiberfloat Corp.*
   897 F.2d 696 (3d Cir. 1990) .............................................................................5

*Miller Yacht Sales, Inc. v. Smith*
   384 F.3d 93 (3d Cir. 2004) ..............................................................................5

*Monkton Ins. Services, Ltd. v. Ritter*
   768 F.3d 429 (5th Cir. 2014) ............................................................................8

*Nabisco Inc., v. Ellison*
   No. Civ. A. 94-1722, 1994 WL 622136 (E.D. Pa. Nov. 8, 1994)...........................................24

*Papasan v. Allain*
   478 U.S. 265 (1986)......................................................................................21

*Piper Aircraft Co. v. Reyno*
    454 U.S. 235 (1981) ..................................................................................15

*Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.*
    468 A.2d 468 (Pa. 1983) .....................................................................21, 22

*Savin Corp. v. Heritage Copy Prod., Inc.*
    661 F. Supp. 463 (M.D. Pa. 1987) ............................................................10

*Schleig v. Communications Satellite Corp.*
    698 F. Supp. 1241 (M.D. Pa. 1988) ..........................................................24

*Seville Indus. Mach. v. Southmost Mach. Corp.*
    742 F.2d 786 (3d Cir. 1984) ......................................................................22

*Sinochem Int'l Co., Ltd. v. Malaysia Int'l Shipping Corp.*
    549 U.S. 422 (2007) ..................................................................................15

*Time Share Vacation Club v. Atl. Resorts, Ltd.*
    735 F.2d 61 (3d Cir. 1984) ..........................................................................5

*Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prod. Co.*
    75 F.3d 147 (3d Cir. 1996) .......................................................................5, 6

*Walden v. Fiore*
    134 S. Ct. 1115 (2014) .....................................................................9, 11, 12

*Windt v. Qwest Commc'ns Int'l, Inc.*
    529 F.3d 183 (3d Cir. 2008) ...........................................................15, 17, 19

## **Statutes**

42 Pa. Cons. Stat. § 5322(b) ..............................................................................5

42 Pa. Cons. Stat. § 5524(7) ............................................................................21

## **Other Authorities**

Fed. R. Civ. P. 4(k)(1)(A) ...................................................................................5

Fed. R. Civ. P. 9(b) .......................................................................................2, 22

Fed. R. Civ. P. 12(b)(6) .........................................................................2, 5, 21, 25

Fed. R. Civ. P. 45 (c)(1)(A) ...............................................................................18

I.    **INTRODUCTION**

Plaintiff Zachary Lutz ("**Lutz**"), a former professional baseball player, has sued:  (1) Japanese corporation Rakuten, Inc.; (2) Rakuten, Inc.'s founder, Hiroshi Mikitani ("**Mikitani**"), a Japanese citizen; and (3) Rakuten, Inc.'s Japanese subsidiary, Rakuten Baseball, Inc. ("**Rakuten Baseball**") (collectively "**Defendants**") in Pennsylvania over failed negotiations for a contract that, if concluded, would have been performed entirely in Japan with Lutz living in Japan and playing for a Japanese baseball team.  Lutz has no legitimate basis for hauling these Japanese Defendants into court in the U.S., and his lawsuit should be dismissed for lack of personal jurisdiction or, alternatively, *forum non conveniens*.  Even if Pennsylvania were a proper forum, the Complaint should be dismissed for failure to state a claim.

There is no personal jurisdiction—either general or specific—over the Japanese Defendants in Pennsylvania and this Court's exercise of jurisdiction over them would be manifestly unfair.  As to general jurisdiction, none of the Japanese Defendants have "continuous and systematic" contacts with Pennsylvania.  As to specific jurisdiction, Lutz's Complaint does not sufficiently arise out of Defendants' limited contacts with Pennsylvania.  Rakuten, Inc. and Mikitani played no part whatsoever in the failed negotiations that give rise to Lutz's Complaint. Rakuten Baseball, which actually negotiated with Lutz, did nothing more than communicate with Lutz a handful times from Japan while Lutz resided in Pennsylvania.  A few isolated communications to Lutz regarding a contract to be performed in Japan cannot give rise to personal jurisdiction in Pennsylvania.

Rather, this case belongs in Japan, which provides a suitable and more convenient alternative forum for Lutz's claims.  Additionally, a lawsuit related to the parties' underlying dispute is already pending in Japan, and in the interests of judicial efficiency and the avoidance

of conflicting judgments, Lutz's claims in Pennsylvania should be dismissed to allow the Japanese court to resolve this dispute.

Even if this case were to remain in Pennsylvania, Lutz's claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).  Lutz's purported fraud and negligent misrepresentation claims:  (1) are barred by Pennsylvania's two-year statute of limitations; (2) are not pleaded with the particularity required by Federal Rule of Civil Procedure 9(b); and (3) fail to allege that Rakuten Baseball intended not to perform any promise at the time it was made.  Lutz's promissory estoppel claim similarly fails because he does not point to an express promise.

## II.   BACKGROUND

### A.   The Defendants

Rakuten Baseball—a Japanese corporation with its principal place of business in Sendai, Japan—owns and operates the Tohoku Rakuten Golden Eagles ("**Golden Eagles**"), a Japanese professional baseball team.  [Declaration of Yozo Tachibana ("**Tachibana Decl.**") ¶ 3.]  Rakuten Baseball is a wholly owned subsidiary of Defendant Rakuten, Inc., a multinational e-commerce and internet service corporation incorporated in Japan and headquartered in Tokyo.  [Declaration of Kenji Hirose ("**Hirose Decl.**") ¶¶ 3, 6.]

Rakuten Baseball does not do any of the following in Pennsylvania or anywhere else in the U.S.:  conduct business; have an agent for service of process; collect or pay sales, property, or any other taxes; own or lease any offices or other real property; maintain corporate records; have bank accounts; have any employees or officers; or hold director or shareholder meetings.  [Tachibana Decl. ¶ 4.]  Rakuten Baseball is not regulated by any U.S. law—federal or state—and has never been involved in a lawsuit in the U.S.  [*Id.*]

Similarly, Rakuten, Inc. is not licensed to conduct business in Pennsylvania; does not have an agent for service of process here; does not collect or pay sales, property, or any other

taxes here; is not regulated by the laws or regulations of Pennsylvania; does not maintain corporate records here; has no bank accounts here; and holds no director or shareholder meetings here. [Hirose Decl. ¶ 5.] It was not involved in the negotiations with Lutz and does not operate the Japanese baseball team. [*Id.* ¶¶ 6, 8.]

As to Mikitani, he is the founder and CEO of Rakuten, Inc. and is a Japanese citizen domiciled in Tokyo, Japan. [Declaration of Hiroshi Mikitani ("**Mikitani Decl.**") ¶ 1.] He does not own the baseball team and had no involvement in the negotiations with Lutz. [*Id.* ¶¶ 5-9; Tachibana Decl. ¶ 14.]

### B.    The 2014 Contract Between Rakuten Baseball And Lutz

In 2014, Rakuten Baseball entered into a contract with Lutz pursuant to which Lutz played baseball for the Golden Eagles, located in Sendai, Japan (the "**2014 Season Contract**"). Pursuant to that contract, Lutz was required to live and work in Japan during the 2014 baseball season, and could not leave without the team's approval. [Tachibana Decl. ¶ 7.] His compensation was subject to Japanese withholding and other taxes, the 2014 Season Contract was subject to oversight and approval by the Japanese Baseball Commissioner and was governed by Japanese law, and the exclusive venue for any disputes under it was in Tokyo. [*Id.*]

### C.    The Failed 2015 Negotiations Between Rakuten Baseball And Lutz

In September 2014, while Lutz was still in Japan, the parties began negotiating for a potential new contract that, if consummated, would have obligated Lutz to again play for the Golden Eagles in Japan for the 2015 season (the "**2015 Season Proposal**"). [*Id.* ¶¶ 8, 9.] During the negotiations, Lutz moved back to Pennsylvania, and Rakuten Baseball, through its employee, Akihito Sasaki ("**Sasaki**"), continued to communicate directly with Lutz a handful of times via email and telephone. [Compl. ¶¶ 34, 39-42, 45 and Exs. 1, 4, 5 thereto.] These few communications are the totality of any claim-related contact that anyone at Rakuten Baseball has

had with Pennsylvania.  [*Id.* ¶ 8.][1]  Rakuten, Inc.—consistent with the fact that it has no

oversight over Rakuten Baseball's operations or negotiations with team players—was not

involved in the 2015 Season Proposal.  [Hirose Decl. ¶ 6; Tachibana Decl. ¶ 5.]  Nor was

Mikitani involved in any way.  [Mikitani Decl. ¶ 4.]  No representatives of Rakuten Baseball or

any other Defendant traveled to Pennsylvania to negotiate the 2015 Season Proposal.  [Tachibana

Decl. ¶ 8.]

      Like the negotiations, the substance of the 2015 Season Proposal was Japan-centric.

Were an agreement reached and approved by the Japanese Baseball Commissioner, Lutz would

have played for the Golden Eagles in Japan—not the U.S.  No performance would have occurred

in the U.S.  [*Id.* ¶ 9.]  Lutz again would have been required to live, work, and pay taxes in Japan,

and would not have been allowed to leave Japan during the term of the agreement without the

team's approval.  [*Id.*]  Again, had an agreement been reached, Japanese law would have

governed and the venue for any disputes would have been Tokyo.  [*Id.*]

      On December 24, 2014, after several months of negotiations, Rakuten Baseball ceased

negotiations with Lutz concerning the 2015 Season Proposal.  [*Id.*]

### D.    The Pennsylvania Lawsuit

      On August 30, 2017—nearly three years after negotiations over the 2015 Season

Proposal ended—Lutz filed the instant lawsuit, alleging claims for (1) fraud, (2) negligent

misrepresentation, and (3) promissory estoppel based on the failed negotiations involving the

2015 Season Proposal.  [Compl. ¶¶ 60-83.]  The foundation for all of his claims is a purported

---

[1] In addition to Sasaki's limited direct communications with Lutz, Rakuten Baseball, through its
employees Sasaki and Hiroshi Abei ("**Abei**"), also communicated with Lutz's agents, Dan
Lozano ("**Lozano**") and Acey Kohrogi ("**Kohrogi**"), who reside in Los Angeles.  [Compl. ¶¶ 34,
35, 42, 47, 48, 55-57.]

false promise—that Rakuten Baseball falsely stated its intention to contract with him when it allegedly never had any such intention.  [*Id.* ¶¶ 62, 71, 79.]

### E.    The Japanese Lawsuit

On November 21, 2017, Rakuten Baseball filed a lawsuit against Lutz in Sendai, Japan (the "**Japanese Lawsuit**").  The Japanese Lawsuit seeks declaratory relief and addresses the same issues and seeks to resolve the same claims raised by Lutz in the action pending before this Court.  [Declaration of Kiyoshi Takahashi ("**Takahashi Decl.**") ¶ 12; Tachibana Decl. ¶ 18.]

## III.   ARGUMENT

### A.    Defendants Are Not Subject To Personal Jurisdiction In Pennsylvania

"To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff bears the burden of establishing the court's jurisdiction over the moving defendants."  *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004).  When a defendant invokes Rule 12(b)(2), the plaintiff (*i.e.*, Lutz) must establish "jurisdictional facts through sworn affidavits or other competent evidence . . . .  [A]t no point may a plaintiff rely on the bare pleadings alone . . . ."  *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66, n.9 (3d Cir. 1984).

Personal jurisdiction over Defendants exists if Pennsylvania's long-arm statute, which provides that its reach is coextensive with the limits placed on the States by the U.S. Constitution, is satisfied.  42 Pa. Cons. Stat. § 5322(b); *Mesalic v. Fiberfloat Corp.*, 897 F.2d 696, 698 (3d Cir. 1990) (district court generally exercises personal jurisdiction according to "the law of the state where the district court sits"); Fed. R. Civ. P. 4(k)(1)(A).  The exercise of personal jurisdiction is constitutional when a court has either general or specific jurisdiction over a putative defendant.  General jurisdiction is based upon the defendant's "continuous and systematic" contacts with the forum and exists even if the plaintiff's cause of action arises from the defendant's non-forum related activities.  *See Vetrotex Certainteed Corp. v. Consol. Fiber*

*Glass Prod. Co.*, 75 F.3d 147, 151, n.3 (3d Cir. 1996).  By contrast, specific jurisdiction is present only if the plaintiff's cause of action arises out of a defendant's forum-related activities, such that the defendant "should reasonably anticipate being haled into court" in that forum.  *Id.* at 151 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

Here, there is neither general nor specific jurisdiction over any of the Defendants.

### 1.     There Is No General Jurisdiction Over Any Of The Defendants

General jurisdiction exists where a foreign corporation's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State."  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).  "[O]nly a limited set of affiliations with a forum will render a defendant amendable to all-purpose jurisdiction there."  *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014).  "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home," *i.e.*, its place of incorporation and principal place of business.  *Id.*  It would be the "exceptional case" where "a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State."  *Id.* at 761.  Factors to consider in assessing a defendant's contacts with the forum state include:  (1) whether the defendant is incorporated or licensed to do business in Pennsylvania; (2) whether the defendant has ever filed any tax returns in the Commonwealth; (3) whether the defendant files administrative reports with any agency or department of Pennsylvania; (4) whether the defendant regularly purchases products or supplies within Pennsylvania for use in its business outside the state; (5) whether the defendant owns land or property within the state; (6) whether the defendant advertises in Pennsylvania; and (7) whether

-6-

the defendant maintains an agent in the Commonwealth.  *Arlington Indus., Inc. v. Elec. Custom Distributors, Inc.*, 817 F. Supp. 2d 473, 480 (M.D. Pa. 2011).

<strong>a.</strong>  <strong><u>There Is No General Jurisdiction Over Rakuten Baseball</u></strong>

Rakuten Baseball has no general contacts with the state of Pennsylvania—or the U.S.  It is a Japanese corporation with its principal place of business in Sendai, Japan.  [Tachibana Decl. ¶ 3.]  It does not conduct business, receive service of process, pay taxes, own or lease real property, maintain corporate records or bank accounts, have employees or officers, or hold corporate meetings in Pennsylvania or the U.S.  [*Id.* ¶ 4.]  It is not regulated by any U.S. law— federal or state—and has never participated in a lawsuit in the U.S.  [*Id.*]

<strong>b.</strong>  <strong><u>There Is No General Jurisdiction Over Rakuten, Inc.</u></strong>

Rakuten, Inc. similarly has no general contacts with Pennsylvania.  It is incorporated in Japan and headquartered in Tokyo.  [Hirose Decl. ¶ 3.]  It is not licensed to conduct business in nor is it regulated by Pennsylvania, and does not receive service of process, pay taxes, maintain corporate records or bank accounts, or hold corporate meetings in Pennsylvania.  [*Id.* ¶ 5.]

Lutz cannot establish general jurisdiction by relying on the e-commerce activities of Rakuten, Inc.'s U.S. subsidiary, Rakuten USA, Inc.[2]  A foreign corporation may not be subjected to the court's general jurisdiction merely based on its subsidiary's in-state contacts.  *Daimler*, 134 S. Ct. at 760 (rejecting an analysis that would "subject foreign corporations to general jurisdiction whenever they have an in-state subsidiary or affiliate").  And even if Rakuten, Inc. could be subject to general jurisdiction based on Rakuten USA, Inc.'s contacts, the mere operation of an e-commerce website is insufficient.  *See, e.g.*, *Goodyear*, 564 U.S. at 926 (the

---

[2] Lutz incorrectly alleges that Rakuten, Inc., not Rakuten USA, Inc. "has significant contacts in Pennsylvania by regularly conducting and soliciting business in Pennsylvania . . . and deriving substantial revenue from goods sold and services provided to Pennsylvania."  [Compl. ¶ 5.]

-7-

fact that a company's products are regularly sold in the forum state does not itself subject the company to general personal jurisdiction over claims that have no connection with the forum state); *Monkton Ins. Services, Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014) (foreign corporation that conducted business with residents of forum state through fully interactive website, transferred funds to banks in that state, and had telephone conversations with a forum resident not subject to general personal jurisdiction there where corporation was neither incorporated nor had its principal place of business in the forum state).

### c. There Is No General Jurisdiction Over Mikitani

Nor can the Court exercise general jurisdiction over Mikitani, a Japanese citizen domiciled in Tokyo, Japan.  [Mikitani Decl. ¶ 1.]  Lutz's allegation that Mikitani "routinely travels to the U.S. on behalf of Rakuten, Inc." [Compl. ¶ 30] does not amount to continuous and systematic contacts sufficient to render Mikitani "at home" in Pennsylvania.  This is especially true where the Complaint does not allege any travel by him to Pennsylvania at all and when all allegations asserted in the Complaint that concern any of the Defendants are pleaded only "upon information and belief" and not on any actual knowledge.  [Compl., introductory paragraph.][3]

### 2. There Is No Specific Jurisdiction Over Any Of The Defendants

A defendant has sufficient "minimum contacts" with a forum state to confer personal jurisdiction where:  (1) defendant *purposefully directed* its activities toward residents of the forum state or otherwise established contacts with the forum state; (2) plaintiff's cause of action *arises out of* or results from defendant's forum-related contacts; and (3) the forum's exercise of personal jurisdiction is reasonable—*i.e.*, it comports with "fair play and substantial justice."

---

[3] "Plaintiff Zachary Lutz . . ., by and for his Complaint against Defendants, alleges the following upon information and belief, except as to the facts and allegation relating to Plaintiff, which are alleged on personal knowledge."

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477–78 (1985).  Once the plaintiff has made a *prima facie* case for jurisdiction based on minimum contacts, the burden then shifts to the defendant to show that the assertion of jurisdiction would be unreasonable.  *Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1226 (3d Cir. 1992).  The "minimum contacts" inquiry focuses "on the relationship among the defendant, the forum, and the litigation."  *Walden v. Fiore*, 134 S. Ct. 1115, 1118 (2014).

Here, Lutz brings claims for (1) fraud, (2) negligent misrepresentation, and (3) promissory estoppel based on the parties' failed negotiations over the 2015 Season Proposal. [Compl. ¶¶ 60-83.]  Defendants' contacts that relate to those claims (if any) are insufficient to support the exercise of specific personal jurisdiction.

### a.  There Is No Specific Jurisdiction Over Rakuten, Inc.

Rakuten, Inc. had no involvement at all in any of Rakuten Baseball's negotiations or decisions concerning Lutz [Hirose Decl. ¶¶ 6, 8], and thus, there are no claim-related contacts with Pennsylvania sufficient to support the exercise of personal jurisdiction over Rakuten, Inc. That should end the inquiry.

Lutz cannot escape this conclusion by attempting to impute actions by Rakuten Baseball (which, as described below, are themselves insufficient to confer personal jurisdiction) to its parent company, Rakuten Inc.  A foreign corporation's contacts with the forum State do not automatically establish jurisdiction over its parent (or vice versa).  *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 (1984); *Holland America Line Inc. v. Wärtsilä North America, Inc.*, 485 F.3d 450, 459 (9th Cir. 2007) ("where a parent and a subsidiary are separate and distinct corporate entities, the presence of one . . . in a forum state may not be attributed to the other").

This is true unless the subsidiary is so dominated by the parent as to be its alter ego.  *See Daimler*, 134 S. Ct. at 759.  In order to disregard the corporate entity for jurisdictional purposes,

however, a plaintiff must make a *prima facie* evidentiary case to establish alter ego liability. *American Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 591 (9th Cir. 1996). Alter ego exists only if "[t]he degree of control exercised by the parent [is] greater than normally associated with common ownership and directorship." *Arch v. Am. Tobacco Co.*, 984 F. Supp. 830, 837 (E.D. Pa. 1997). A plaintiff must prove that the parent controls the day-to-day operations of its subsidiary such that its subsidiary can be said to be a mere department of the parent. *Id.*; *see also Clark v. Matsushita Elec. Indus. Co.*, 811 F. Supp. 1061, 1067-68 (M.D. Pa. 1993) (absent a showing of control, "subsidiaries even if wholly-owned, are presumed separate and distinct entities from their parent corporations"); *In re Enter. Rent-A-Car Wage & Hour Employment Practices Litig.*, 735 F. Supp. 2d 277, 322–23 (W.D. Pa. 2010), *aff'd*, 683 F.3d 462 (3d Cir. 2012) (finding subsidiary was not alter ego for the purposes of personal jurisdiction despite sharing of directors, 100% ownership by parent, use of a common marketing image and joint use of trademarked logos, use of integrated sales system, and use of services from parent's IT and HR departments because parent did not exercise any control over the internal workings or day-to-day operations of its subsidiary). In analyzing the parents' control, courts also consider "financing of the subsidiary by the parent, . . . the subsidiary being grossly under capitalized, the parent paying the salaries or expenses of the subsidiary, the subsidiary having no business or assets apart from its parent, the failure to adhere to formal legal requirements of the subsidiary, the confusion of distinction between the parent and its subsidiary and the subsidiary not having a full board of directors." *Savin Corp. v. Heritage Copy Prod., Inc.*, 661 F. Supp. 463, 469 (M.D. Pa. 1987). None of these factors favor Lutz, nor has Lutz submitted any evidence concerning them.

-10-

While Rakuten Baseball is a wholly owned subsidiary of Rakuten, Inc., it is a separate entity and operates as such. [Hirose Decl. ¶ 6; Tachibana Decl. ¶ 5.] Rakuten, Inc. has no operational oversight concerning Rakuten Baseball's operations, business, or negotiations with team players. [*Id.*] Rakuten, Inc. and Rakuten Baseball maintain corporate formalities—they hold their own shareholder meetings and board meetings, maintain their own minutes, file their own corporate records, maintain separate bank accounts and offices, and have adequate capital for their separate operations. [Hirose Decl. ¶ 7; Tachibana Decl. ¶ 6.] Rakuten, Inc. does not pay taxes on behalf of Rakuten baseball. [*Id.*] Lutz's conclusory allegations to the contrary [Compl. ¶¶ 19, 22]—pleaded only on information and belief [*id.*, introductory paragraph]— cannot overcome the reality of corporate separateness.

**b.      There Is No Specific Jurisdiction Over Mikitani**

Mikitani had no involvement whatsoever in the negotiations with Lutz over the 2015 Season Proposal or the decision not to sign Lutz [Mikitani Decl. ¶¶ 6-9]—the act that forms the basis of all of Lutz's claims—and thus there are no claim-related contacts with Pennsylvania sufficient to support the exercise of specific jurisdiction over him. Lutz's unsubstantiated allegations to the contrary [Compl. ¶ 29, 54-56], again pleaded on mere information and belief [*id.*, introductory paragraph], cannot overcome Mikitani's signed declaration.

**c.      There Is No Specific Jurisdiction Over Rakuten Baseball, Inc.**

"For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a *substantial connection* with the forum State." *Walden*, 134 S. Ct. at 1121–22 (emphasis added). "[T]he relationship must arise out of contacts that the 'defendant *himself* ' creates with the forum State." *Id.* at 1122 (quoting *Burger King*, 471 U.S. at 475) (emphasis in original); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984) ("[The] unilateral activity of another party or a third person is not an appropriate

consideration when determining whether a defendant has sufficient contacts with a forum State

to justify an assertion of jurisdiction"). Further, it must be foreseeable that the defendant could

be haled into court in the forum state based on its contacts there. *See, e.g.*, *Burger King*, 471

U.S. at 475 (recognizing that some "single or occasional acts" may create only an "attenuated"

affiliation with the forum that will not support the exercise of personal jurisdiction).

Rakuten Baseball began negotiating with Lutz on the 2015 Season Proposal when he

lived in Japan. [Tachibana Decl. ¶ 8.] Rakuten Baseball communicated with Lutz a handful of

times in Pennsylvania *only* because Lutz chose to move to Pennsylvania in the middle of

negotiations. [Compl. ¶¶ 34, 39-42, 45 and Exs. 1, 4, 5 thereto.] On this record, where the

parties were in Japan, negotiating a contract to be performed entirely in Japan, to be governed by

Japanese law, and where Lutz would be working and living in Japan, Lutz's decision to move to

Pennsylvania, where those negotiations then continued but were never concluded, cannot subject

Rakuten Baseball to jurisdiction here. *See*, *e.g.*, *Walden*, 134 S. Ct. at 1119 (holding police

officer in Georgia intentionally violating plaintiffs' constitutional rights at Atlanta airport not

aimed at Nevada simply because plaintiffs lived there); *Hunt v. Erie Ins. Group*, 728 F.2d 1244,

1247 (9th Cir. 1984) (finding insurance company not subject to jurisdiction in California based

on its communications with plaintiff after plaintiff's unilateral decision to move to California).

> ### d.     Even If Lutz Could Establish Specific Jurisdiction Over The Defendants, The Exercise Of Jurisdiction In This Case Is Unreasonable

Even if Lutz could meet his burden of showing sufficient forum contacts, which he

cannot, this action should be dismissed because the exercise of jurisdiction by Pennsylvania

courts over Defendants would be unreasonable and would not "comport with fair play and

substantial justice." *Burger King*, 471 U.S. at 477–78. In determining "reasonableness," courts

consider:  (1) the extent of defendant's "purposeful" interjection; (2) the burden on defendant in

defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Id.* at 476–77. These factors counsel against a finding of personal jurisdiction over Defendants in this forum.

The first two factors clearly favor Defendants. As discussed above, the extent of Defendants' "purposeful" interjection in Pennsylvania is either non-existent (for Rakuten, Inc. or Mikitani) or limited to a few communications that occurred only because Lutz unilaterally chose to move from Japan to Pennsylvania in the middle of negotiations. With such nonexistent contacts in Pennsylvania—all defense witnesses and documents are located in Japan [Tachibana Decl. ¶¶ 11, 12; Hirose Decl. ¶ 3; Mikitani Decl. ¶ 1]—the burden on Defendants in defending in Pennsylvania is quite high. This burden should be accorded significant weight. *Asahi*, 480 U.S. at 114 ("The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders.").

The third, fifth, and seventh factors[4] similarly favor Defendants. Japan has a strong and superior interest in adjudicating this dispute, which concerns the regulation of the recruiting and negotiating conduct of its professional baseball teams. In fact, the 2014 Season Contract was, and the 2015 Season Proposal, if it had ever concluded, would have been, subject to regulation by the Japanese Baseball Commissioner. [Tachibana Decl. ¶¶ 7, 9.] Japan would also provide the most efficient judicial resolution of this controversy because all of the documents and

---

[4] The seventh factor, the suitability of Japan as an alternative forum, is discussed in detail in Section III(B), *infra*.

witnesses concerning the decision not to sign Lutz are located in Japan and are likely in Japanese.  [*Id.* ¶ 12.]   And, litigation over this dispute is already pending in Japan.  [*Id.* ¶ 18.]

By contrast, litigating this case in the U.S. would effectively subject Rakuten Baseball to jurisdiction in the U.S. any time it, from its headquarters in Japan, happened to recruit an athlete living in the U.S., which result is unreasonable and inequitable.  *See, e.g.*, *Conti v. Pneumatic Products Corp.*, 977 F.2d 978, 983 (6th Cir. 1992) (finding no personal jurisdiction despite the employer's hiring of an in-state recruiter because requiring jurisdiction in every state where an employer recruited "would unnecessarily restrict nationwide searches for candidates").[5]  This is especially true when Rakuten Baseball hires baseball players to live and play in Japan, subject to Japanese laws and rules.  Lutz's location had no bearing on the negotiations or the services that would have been performed had an agreement been reached—he could just as easily have been located in Tennessee or the Dominican Republic.

While the fourth and sixth factors slightly favor Lutz—Pennsylvania has an interest in protecting its residents and it is more convenient for Lutz to litigate where he lives—as discussed in detail in Section III(B), *infra*, litigation in Japan is not sufficiently inconvenient or ineffective for Lutz to justify litigating in Pennsylvania.  Moreover, it was entirely foreseeable that Lutz would be haled into court in Japan.  He previously worked and resided in Japan, and the 2014 Season Contract and 2015 Season Proposal selected Japanese law as the governing law and Japan as the forum for resolution of any disputes.  [Tachibana Decl. ¶¶ 7, 9.]

---

[5] This is not a situation where Rakuten Baseball is regularly recruiting players in Pennsylvania or even the U.S. and attempting to evade the foreseeable exercise of jurisdiction.  Rather, the Complaint alleges that Rakuten has negotiated with a mere 14 professional baseball players from the U.S. over a decade, none of whom Lutz alleges was located in Pennsylvania.  [Compl. ¶ 24.]

-14-

Weighing all of these factors, including the heavy burden on the alien Defendants, Japan's strong interest in resolving this dispute and the slight interests of Lutz and Pennsylvania in litigating here, the exercise of personal jurisdiction by a Pennsylvania court would be unreasonable and unfair, and this case should be dismissed for lack of jurisdiction.

B.    **The Court Should Dismiss Or Stay This Action On Grounds Of _Forum Non Conveniens_**

The common law doctrine of _forum non conveniens_ permits a district court to dismiss a case if "a court abroad is the more appropriate and convenient forum for adjudicating the controversy." _Sinochem Int'l Co., Ltd. v. Malaysia Int'l Shipping Corp._, 549 U.S. 422, 425 (2007). The decision to dismiss a case based on _forum non conveniens_ rests in the discretion of the trial court. _Windt v. Qwest Commc'ns Int'l, Inc._, 529 F.3d 183, 188–89 (3d Cir. 2008). "The district court is accorded substantial flexibility in evaluating a forum non conveniens motion and each case turns on its facts." _Windt_, 529 F.3d at 188 (internal citations omitted). "Dismissal for _forum non conveniens_ reflects a court's assessment for a range of consideration, most notably the convenience of the parties and the practical difficulties that can attend the adjudication of a dispute in a certain locality." _Sinochem_, 549 U.S. at 429 (internal citations omitted).

When considering a motion to dismiss on _forum non conveniens_ grounds, the court must address: (1) the availability of an adequate alternative forum that can entertain the case; (2) the amount of deference due to the plaintiff's choice of forum; (3) the private interest factors; and (4) the public interest factors. _Windt_, 529 F.3d at 190.

1.    **Japanese Courts Provide A Suitable Alternative Forum**

To satisfy the adequacy requirement, (1) defendant must be amenable to process in the alternative forum, and (2) the subject matter of the lawsuit must be cognizable in the alternative forum where the plaintiff can be afforded appropriate redress. _See Piper Aircraft Co. v. Reyno_,

454 U.S. 235, 254, n.22 (1981).  Here, all three Defendants are citizens of Japan and thus are amenable to service of process there.  [Takahashi Decl. ¶ 6.]  Lutz's claims for (1) fraud, (2) negligent misrepresentation, and (3) promissory estoppel are cognizable in Japan as torts for which Lutz may bring equivalent claims and seek redress.  [*Id.* ¶ 7.]  Japan therefore meets the requirements of providing a suitable alternative forum for Lutz's claims.

### 2.   The Court Should Dismiss Or Stay This Action Pending Resolution Of A Parallel Proceeding In Japan

A court has discretion to dismiss an action when a "parallel" action is pending in a foreign forum.  *Commc'ns, LLC v. AMResorts, L.P.*, No. CV 16-5575, 2017 WL 4012687, at *13 (E.D. Pa. Sept. 11, 2017) (dismissing action on grounds of international comity and *forum non conveniens*).  "A proceeding is parallel when there is a substantial likelihood that the [foreign] litigation will dispose of all claims presented in the federal case."  *Id.*

On November 21, 2017, Rakuten Baseball filed the Japanese Lawsuit, which addresses the same issues and seeks to resolve the same claims raised by Lutz in the action pending in this Court.  [Takahashi Decl. ¶ 11.]  Specifically, the Japanese Lawsuit asks the Japanese court to rule that Rakuten Baseball did not commit any torts with respect to Lutz and that it is not liable to him for any of the claims he asserts.  [*Id.* ¶ 12.]  Lutz has the ability to assert counterclaims in the Japanese court seeking affirmative relief against Rakuten Baseball.  [*Id.*]  He can also file a separate lawsuit to assert similar claims against Rakuten, Inc. and Mikitani (even putting aside the fact that such claims would be meritless because neither was involved in the negotiations between Rakuten Baseball and Lutz).

### 3.   Lutz's Choice Of Forum

Although a plaintiff's choice of forum is given deference, "[w]hen an alternative forum has jurisdiction to hear the case, and when trial in the plaintiff's chosen forum would 'establish .

. . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience,' . . . the court may, in the exercise of its sound discretion, dismiss the case." *Windt v. Qwest Commc'ns Int'l, Inc.*, 529 F.3d 183, 189 (3d Cir. 2008).   This is true even for U.S. plaintiffs.  *Delta Airlines, Inc. v. Chimet, S.p.A.*, No. CIV.A. 07-2898, 2008 WL 5336720, at *3 (E.D. Pa. Dec. 19, 2008), *aff'd sub nom. Delta Air Lines, Inc. v. Chimet, S.p.A.*, 619 F.3d 288 (3d Cir. 2010) ("[A] plaintiff's choice of its home forum is not always dispositive, and United States citizens may sometimes be required to litigate in foreign courts.").  Because, as explained below, the inconvenience to Defendants of defending here would dwarf any inconvenience to Lutz of litigating in Japan, this factor cannot justify keeping the case here.

### 4. Private Interest Factors Favor Resolution Of This Case In Japan

"Factors pertaining to the private interests of the litigants include:  the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive."  *Windt*, 529 F.3d at 189.

#### a. Access To Sources Of Proof

The majority of the witnesses and documents relevant to this case are in Japan.  Of all the potential witnesses (both party and non-party), only Lutz resides in Pennsylvania.  All other witnesses would need to travel to testify at trial.  Specifically, all three Defendants are citizens of Japan.  [Hirose Decl. ¶ 3; Mikitani Decl. ¶ 1; Tachibana Decl. ¶ 3.]  The Rakuten Baseball representatives, Sasaki and Abei, who communicated with Lutz or his agents also are citizens of Japan.  [Tachibana Decl. ¶ 11.]  Other Rakuten Baseball employees with knowledge of its negotiations and decision to terminate negotiations with Lutz are likewise in Japan.  [*Id.* ¶ 11.]  Lutz's agents, Kohrogi, Lozano, and Tim Clark, appear to reside in Los Angeles, California.

[Compl. ¶¶ 34, 42.]  All of these individuals would be inconvenienced if this case is litigated in Pennsylvania, which is convenient only for Lutz.  By contrast, the great majority of the persons with knowledge of the relevant facts will be available in Japan if this case is litigated there.

Similarly, the vast majority of the documents relevant to this case are located in Japan. [Tachibana Decl. ¶ 12.]  In particular, documents concerning Rakuten Baseball's decision to terminate and reasons for terminating negotiations with Lutz are located in Japan.  [*Id.*]  It appears that all or nearly all of the communications among Lutz, his agents, and Rakuten Baseball's representatives were sent via email, and are available in either location.  Aside from these communications, and given Rakuten Baseball's limited contacts with Pennsylvania, there appear to be no relevant documents that are available only in Pennsylvania.  This factor thus weighs heavily in favor of dismissal of this action.

### b. <u>Compulsory Process And Cost Of Obtaining Witnesses</u>

If this case remains in Pennsylvania, then the majority of witnesses, who live in Japan, cannot be compelled to testify at trial, and if they chose to do so, they would need to fly halfway across the world.  If the case is litigated in Japan, by contrast, only Lutz would need to travel from Pennsylvania.  Lutz's agents in Los Angeles—the only non-party witnesses identified— would be outside of the subpoena power of a court in either Japan or Pennsylvania and would have to travel if they chose to testify.  Fed. R. Civ. P. 45 (c)(1)(A) ("A subpoena may command a person to attend a trial . . . within 100 miles of where the person resides, is employed, or regularly transacts business in person"); *see also Dinterman v. Nationwide Mut. Ins. Co.*, 26 F. Supp. 2d 747, 750 (E.D. Pa. 1998) (transferring case where the majority of witnesses were located outside of the district, beyond the federal court's subpoena power).  On balance, this factor is either neutral or weighs slightly in favor of dismissal.

-18-

### c.   Other Practical Problems

Translation and interpretation issues also weigh in favor of litigation in Japan.  *Dahl v. United Techs. Corp.*, 632 F.2d 1027, 1031 (3d Cir. 1980) ("[t]he need to translate documents and the testimony of witnesses from [a foreign language] to English and to interpret [foreign] law militates in favor of dismissal").  Because the majority of the witnesses at Rakuten Baseball speak Japanese, and do not speak English well enough to testify in a legal proceeding in English, their testimony will require interpreters.  [Tachibana Decl. ¶ 11.]  In Japan, only Lutz and his agents, should they choose to testify, would require interpreters.  Similarly, many key documents, particularly documents concerning Rakuten Baseball's decision to terminate and reasons for terminating negotiations with Lutz are in Japanese and will require translation if this case is litigated in Pennsylvania.  [*Id.* ¶ 12.]  Other documents that were communicated to Lutz and his representatives would need to be translated if the case is litigated in Japan, but many of these documents, such as the 2014 Season Contract and the 2015 Season Proposal documentation, already exist in both English and Japanese, so the burden of translation is somewhat reduced.  [*Id.*]  On balance, this factor weighs slightly in favor of dismissal.

Because, in sum, the private interest convenience factors favor litigation in Japan, the Court should dismiss or stay this action on grounds of *forum non conveniens*.

### 5.   Public Interest Factors Favor Resolution Of This Case In Japan

"Public interest factors bearing on the inquiry include administrative difficulties flowing from court congestion; the "local interest in having localized controversies decided at home"; the interest in "having the trial of a diversity case in a forum that is at home with the state law that must govern the case"; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.  *Windt*, 529 F.3d at 189.

First, choice-of-law issues favor litigation in Japan.  Under Pennsylvania choice-of-law principles, the court first determines whether there is a conflict between the laws of the forum state and those of the foreign jurisdiction.  *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 226 (3d Cir. 2007).  If there is no real conflict, the court may bypass the issue and presume the law of the forum state controls.  *Id.* at 229.  Where there is a true conflict, the court must determine "which state has the greater interest in the application of its law" by examining both the significant relationships and both jurisdictions' policies with respect to the controversy.  *Id.* at 231.  Here, there exists a true conflict because Lutz seeks punitive damages [Compl. at 21, concluding paragraph] and Japan does not permit punitive damages awards.  [Takahashi Decl. ¶8.]

As it is clear that Japan has the most significant relationship with the controversy at issue and a strong policy interest in the resolution of this dispute, Japanese law applies.  As discussed above, while Pennsylvania has some interest in ensuring that its residents are not subjected to allegedly false promises, Japan has a much greater interest in the resolution of this dispute, in part because all professional baseball activities there are subject to regulation and oversight by the Japanese Baseball Commissioner, the 2014 Season Contract was governed by Japanese law, the 2015 Season Proposal was intended to be governed by Japanese law, and negotiations over that proposed agreement commenced in Japan when both Rakuten Baseball and Lutz were located there.  [Tachibana Decl. ¶¶ 7, 9.]  For Pennsylvania, this is not a localized controversy.  Rather, it stems from a handful of communications made to Lutz in Pennsylvania about a potential contract to be performed in Japan and governed by Japanese law.  The communications were received in Pennsylvania only after Lutz chose to move there from Japan.

This dispute concerns the operations of a professional Japanese baseball team that is part of Japan's national league and its efforts to recruit and negotiate with foreign players.  Japanese

law applies, and it would be manifestly unfair to force this Japanese baseball team to litigate this dispute in Pennsylvania, where the Court lacks familiarity with Japanese law and the team has no operations or other contacts, simply because it would be more convenient for Lutz.

### C.      Lutz's Complaint Should Be Dismissed Under Rule 12(b)(6) For Failure To State A Claim

A motion under Rule 12(b)(6) must be granted if the plaintiff fails to state a claim upon which relief may be granted.  A plaintiff's legal conclusions are not entitled to deference, and the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).  A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In ruling on a Rule 12(b)(6) motion, this Court may consider not only those allegations but also "any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, [or] matters of public record."  *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (citation omitted).

### 1.      Lutz's Fraud And Negligent Misrepresentation Claims Are Barred By The Statute Of Limitations

Even if this were a proper forum and Pennsylvania law applied, Lutz's fraud and negligent misrepresentation claims would be barred by the applicable two-year statute of limitations.  42 Pa. Cons. Stat. § 5524(7).  The limitations period begins to run from the time the cause of action accrues, and a cause of action accrues "as soon as the right to institute and maintain a suit arises."  *Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.*, 468 A.2d 468, 471 (Pa. 1983).

Lutz contends that Defendants committed fraud and negligent misrepresentation when they failed to sign him for the 2015 baseball season in December 2014.  According to his Complaint, Lutz knew that he would not be signed on December 24, 2014 when Abei informed

Lutz's Los Angeles agent that Rakuten Baseball had decided to cease negotiations with Lutz related to the 2015 Season Proposal.  [Compl. ¶ 57.][6]  The statute of limitations on these claims thus ran on December 24, 2016, yet Lutz did not file the instant lawsuit until August 30, 2017.

> **2.**     **Lutz's Fraud Claim Also Fails Because It Is Not Pleaded With Specificity**

Federal Rule of Civil Procedure Rule 9(b) requires that fraud claims be pleaded with particularity.  The purposes of this rule are to provide notice of the precise misconduct with which defendants are charged and to "safeguard defendants against spurious charges of immoral and fraudulent behavior."  *Seville Indus. Mach. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984).  Thus, a plaintiff must plead "the who, what, when, where and how of the" alleged fraud, even where a complaint is pleaded on information and belief.  *Institutional Inv'rs Grp. v. Avaya, Inc.*, 564 F.3d 242, 253 (3d Cir. 2009).  Lutz does not meet this standard.

The thrust of Lutz's fraud claim is that Defendants falsely stated that they intended to sign him in 2015.  [Compl. ¶¶ 61, 62.]  In other words, Lutz contends that Defendants made a false promise.  Lutz, however, does not plead with specificity any such promise.  Rather, the Complaint is full of equivocal statements—"We ***believe*** we can do something for your contract", "***Hopefully***, we can now move forward . . .", and  "I ***believe*** now all set."  [Compl. ¶¶ 39-41 (emphasis added)].  Nor does Lutz plead that any such promise was false at the time that it was

---

[6] Because Lutz knew on December 24, 2014 that he would not be signed for the 2015 season, he has no basis for invoking any exceptions to the statute of limitations, such as the discovery rule, which can toll the limitations period where the injured party is unable, "despite the exercise of reasonable diligence, to know of the injury or its cause."  *Pocono*, 468 A.2d at 471.  Where, as here, "reasonable minds would not differ in finding that a party knew or should have known on the exercise of reasonable diligence of his injury and its cause," the court may determine that the discovery rule does not apply as a matter of law.  *Drelles v. Mfr. Life Ins. Co.*, 881 A.2d 822, 832 (Pa. Super. Ct. 2005); *Pocono*, 468 A.2d at 471 (finding no equitable exception to the statutory limitation was warranted because the cause of action was discoverable by the exercise of due diligence as a matter of law).

made.  This is critical for a fraud claim based on a false promise theory:  "while a cause of action for fraud must allege misrepresentation of a past or present material fact, a statement of present intention **which is false when uttered** may constitute a fraudulent misrepresentation of fact."  *Bennett v. Itochu Int'l, Inc.*, 682 F. Supp. 2d 469, 479 (E.D. Pa. 2010) (emphasis added).  Lutz alleges only that Defendants made unspecified promises to Lutz, reached an agreement with him, and then failed to follow through.[7]  However, "non-performance does not by itself prove a lack of present intent," *id.*, and the fraud claim should be dismissed for failure to state a claim.

### 3. Lutz's Negligent Misrepresentation Claim Also Fails Because It Cannot Be Based On A False Promise

A negligent misrepresentation claim may not be based on a false promise:

> Like with fraudulent misrepresentation, negligent misrepresentation requires a negligent statement regarding a present, material fact.  However, in a claim for fraudulent misrepresentation, a statement of opinion or future fact can be the basis for a fraudulent misrepresentation claim if it is shown that the statement was false at the time it was made.  However, the same logic cannot be applied to a claim of negligent misrepresentation.  At the time that a statement is made regarding what the speaker intends to do in the future, the speaker either intends at the moment to take the action he is promising or not.  *The speaker cannot be negligent as to his future intentions.*  Therefore, for a claim of negligent misrepresentation there is no exception to the rule that a misrepresentation must be of a present fact and not a future intention like there is with a claim of fraudulent misrepresentation.

*Bennett*, 682 F. Supp. 2d at 480–81 (emphasis added).

Lutz's negligent misrepresentation claim, like his fraud claim, is based on a false promise:  he claims that Defendants "provided false information . . . about the new 2015 contract, their intention to enter into such a contract with Plaintiff, and the terms of such an agreement."  [Compl. ¶ 71.]  This conclusory paragraph aside, the Complaint alleges no facts to

---

[7] As Lutz pleads repeatedly that he and Defendants "agreed on the material terms of a new one year contract for the 2015 season," one may wonder why he has not attempted to allege a claim for breach of contract.  The answer is clear:  if an agreement had been reached (it was not), then Lutz would have had to bring his claims in Japan.  [Tachibana Decl. ¶ 9.]

suggest that Defendants made any "false" statements about the purported 2015 contract, other than Defendants' intention to be bound by it.  Thus, this claim fails as a matter of law.

**4.    Lutz's Promissory Estoppel Claim Fails To Allege An Express Promise And Reasonable Reliance**

To state a claim for promissory estoppel in Pennsylvania, a plaintiff must allege:  (1) the defendant made a promise that it should have reasonably expected to induce action or forbearance on the part of the plaintiff; (2) the plaintiff actually took action or refrained from taking action in reliance on the promise; and (3) injustice can be avoided only by enforcing the promise.  *See Crouse v. Cyclops Industries*, 745 A.2d 606, 610 (Pa. 2000).

To satisfy the first element of a promissory estoppel claim, a plaintiff must plead facts to show the existence of an express promise made by defendants; an implied promise is insufficient.  *C & K Petroleum Prods., Inc., v. Equibank*, 839 F.2d 188, 192 (3d Cir. 1988) ("Promissory estoppel would be rendered meaningless if this Court were to allow [plaintiff] to maintain an action for detrimental reliance based on the alleged existence of such a broad and vague implied promise."); *see also Schleig v. Communications Satellite Corp.*, 698 F. Supp. 1241, 1249 (M.D. Pa. 1988) (reliance based solely upon subjective expectations and not upon any clear promise by defendants was unjustified); *Nabisco Inc., v. Ellison*, No. Civ. A. 94-1722, 1994 WL 622136, at *7 (E.D. Pa. Nov. 8, 1994) (finding plaintiff could not maintain claims upon an implied promise it inferred from defendant's silence and conduct).

Lutz points to no express promise made by Rakuten Baseball and only vaguely alleges that "Defendants made promises to Plaintiff and to Plaintiff's duly authorized agents about the terms and conditions of the new 2015 contract and their intention to enter into that 'final agreement' with Plaintiff."  [Compl. ¶ 79.]  Lutz does not allege that Rakuten Baseball unequivocally promised to enter into the agreement.  Instead, Lutz appears to rely on Rakuten

Baseball's course of conduct in negotiating the 2015 Season Proposal and use of the term "final agreement"—an implied promise, at best, which is insufficient as a matter of law. Lutz's promissory estoppel claim should be dismissed for this reason alone.

Lutz's claim also fails because Lutz could not have reasonably relied on the alleged oral promises. The reasonableness of a plaintiff's reliance can be assessed based on the prior conduct of the parties. *See, e.g.*, *MDNet, Inc. v. Pharmacia Corp.*, 147 Fed. App'x 239, 244 (3d Cir. 2005) (finding plaintiff could not have reasonably relied on the alleged promise where the plaintiff's prior agreement required a writing for a further binding agreement, and plaintiff alleged no facts showing an intention to waive or modify the requirement of a writing). Having entered into a fully executed, written contract with Rakuten Baseball for the 2014 season, Lutz was well aware that Rakuten Baseball required a fully executed, written contract. It was therefore unreasonable for Lutz to rely on the receipt of an unexecuted copy of the proposed 2015 agreement that simply reflected the most recent changes discussed by the parties.

## IV. <u>CONCLUSION</u>

For all of the foregoing reasons, Defendants Rakuten Baseball, Inc., Rakuten, Inc. and Hiroshi Mikitani respectfully request that the Court enter an order (1) dismissing this case with prejudice for lack of personal jurisdiction over the Defendants; (2) dismissing or staying this case pending resolution of a parallel proceeding in Japan or on grounds of *forum non conveniens*; and (3) dismissing all claims with prejudice for failure to state a claim under Rule 12(b)(6).

Dated:  November 30, 2017          Respectfully submitted,

By _____
                    */s/ Joseph E. Wolfson*
                    JOSEPH E. WOLFSON

STEVENS & LEE PC
JOSEPH E. WOLFSON, Pa. Bar No. 44431
620 Freedom Business Center, Suite 200
King of Prussia, Pennsylvania  19406
Telephone:       (610) 205-6019
Facsimile:       (610) 988-0808
Email:           jwo@stevenslee.com

SHEPPARD MULLIN RICHTER & HAMPTON LLP
KENT R. RAYGOR, Cal. Bar No. 117224
CRISTINA M. SALVATO, Cal. Bar No. 295898
1901 Avenue of the Stars, Suite 1600
Los Angeles, California  90067-6055
Telephone:       (310) 228-3700
Facsimile:       (310) 228-3701
Email:           kraygor@sheppardmullin.com
                 csalvato@sheppardmullin.com
(*Pro Hac Vice* Applications Pending)

*Counsel for Defendants Rakuten Baseball, Inc.,*
*Rakuten, Inc., and Hiroshi Mikitani*

484831905.1

## <u>CERTIFICATE OF SERVICE</u>

I, Joseph E. Wolfson, hereby certify that on the 30th day of November, 2017, the foregoing document was filed electronically, is available for viewing and downloading from the CM/ECF System, and has been served via the Court's electronic filing service on all counsel of record.

<u>*/s/ Joseph E. Wolfson*                    </u>

*Counsel for Defendants Rakuten Baseball, Inc., Rakuten, Inc., and Hiroshi Mikitani*

484831905.1