# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ZACHARY LUTZ,<br><br>                Plaintiff,<br><br>        v.<br><br>RAKUTEN, INC., RAKUTEN BASEBALL,<br>INC. and HIROSHI MIKITANI,<br><br>                Defendants. | Civil Action No. 17-03895<br><br>**DECLARATION OF<br>YOZO TACHIBANA<br>SUBMITTED ON BEHALF OF<br>RAKUTEN BASEBALL, INC.**<br><br>[ELECTRONICALLY FILED] |

## <u>DECLARATION OF YOZO TACHIBANA</u>

### <u>SUBMITTED ON BEHALF OF RAKUTEN BASEBALL, INC.</u>

I, Yozo Tachibana, declare as follows:

1.      I am the CEO of Rakuten Baseball, Inc., which is named as a defendant in the above-captioned litigation filed by Plaintiff Zachary Lutz against specially appearing, non-resident, named defendants Rakuten, Inc., Rakuten Baseball, Inc., and Hiroshi Mikitani (collectively, the "**Named Defendants**").  I am a Japanese citizen and my primary residence is in Tokyo, Japan.  I have personal knowledge of the facts stated herein and, if called as a witness, could and would competently testify thereto.

2.      I submit this declaration in support of the Named Defendants' combined *Motion To:  (1) Dismiss For Lack Of Personal Jurisdiction Under Rule 12(b)(2); (2) Dismiss Or Stay Pending Resolution Of A Parallel Proceeding In Japan And On Grounds Of Forum Non Conveniens; and (3) Dismiss For Failure To State A Claim Under Rule 12(b)(6).*

### <u>Rakuten Baseball, Inc.</u>

3.      Rakuten Baseball, Inc. is a Japanese corporation headquartered at 2-11-6 Miyagino, Miyagino-ku, Sendai, Miyagi 983-0045, Japan.  Rakuten Baseball, Inc. owns and operates the Tohoku Rakuten Golden Eagles, a professional baseball team located in Sendai, Japan.  *See* https://www.rakuteneagles.jp/.

4.      Rakuten Baseball, Inc.:

▪      Does not conduct business in Pennsylvania, or anywhere else in the U.S.

▪      Is not licensed to conduct business in Pennsylvania, or anywhere else in the U.S.

▪      Does not have an agent for service of process in Pennsylvania, or anywhere else in the U.S.

- Does not collect or pay sales, property, or any other taxes in Pennsylvania, or anywhere else in the U.S.

- Is not regulated by the laws or regulations of Pennsylvania or any other state in the U.S.

- With the exception of this lawsuit, has never previously been involved in any lawsuit anywhere in the U.S.

- Does not own or lease any offices or other real property in Pennsylvania, or anywhere else in the U.S.

- Has no assets in Pennsylvania, or anywhere else in the U.S.

- Does not maintain corporate records in Pennsylvania, or anywhere else in the U.S.

- Has no bank accounts in Pennsylvania, or anywhere else in the U.S.

- Does not have any employees or officers in Pennsylvania, or anywhere else in the U.S.

- Holds no director or shareholder meetings in Pennsylvania, or anywhere else in the U.S.

### Rakuten, Inc.

5.      Rakuten Baseball, Inc. is not a division of Rakuten, Inc.  While it is a wholly owned subsidiary of Rakuten, Inc., it is a separate entity and operates as such.  Rakuten, Inc. has no operational oversight concerning Rakuten Baseball, Inc.'s operations, business, or negotiations with its baseball team players.  Rakuten, Inc. does not get involved in Rakuten Baseball, Inc.'s negotiations with baseball team players.

6.      Rakuten, Inc. and Rakuten Baseball, Inc. are separate entities and they maintain separate corporate formalities.  They each hold their own shareholder meetings and board meetings, maintain their own minutes, file their own corporate records, maintain separate bank

DECLARATION OF YOZO TACHIBANA SUBMITTED ON BEHALF OF RAKUTEN BASEBALL, INC.

accounts and offices, and have adequate capital for their separate operations.  Rakuten, Inc. does not pay taxes on behalf of Rakuten Baseball, Inc.

## **Zachary Lutz**

7.     The 2014 Season:  In 2014, Rakuten Baseball, Inc. entered into a contract with Plaintiff Zachary Lutz for his services as a professional baseball player (the "**2014 Season Contract**") for its team, the Tohoku Rakuten Golden Eagles, located in Sendai, Japan.  Mr. Lutz had been playing for the New York Mets and was released from the Mets mid-season in June 2014 so he could sign with the Tohoku Rakuten Golden Eagles.  The 2014 Season Contract required Mr. Lutz to live and work in Sendai, Japan from June 15 to November 30, 2014 and specified that he was not allowed to leave Japan during that term without the team's approval. Under the 2014 Season Contract, the team provided Mr. Lutz with housing, a meal allowance, and medical care in Japan, and Mr. Lutz was responsible for the costs of local Japanese transportation.  The 2014 Season Contract was governed by Japanese law, and the exclusive venue for any disputes under it was in Tokyo.  Mr. Lutz's compensation was subject to Japanese withholding, consumption, and other taxes.  Further, the right to take and use photographs and video of Mr. Lutz was given to the team, other Japanese baseball teams and the Japanese Baseball League, and Mr. Lutz's contract was subject to oversight and approval by the Japanese Baseball Commissioner.  All performances under the 2014 Season Contract were to take place in Japan (and potentially other Asian countries, depending on the team's potential success in championship games).  None of Mr. Lutz's services under the 2014 Season Contract were to be performed in Pennsylvania or anywhere else in the U.S. and, in fact, he performed no services for Rakuten Baseball, Inc. in Pennsylvania or anywhere else in the U.S.

8.     The 2015 Season:  In September 2014, while Mr. Lutz was still in Japan, Akihito Sasaki, Director of the Baseball Team Strategy Office at Rakuten Baseball, Inc., began

negotiating with Mr. Lutz regarding the terms for a potential new contract that, if consummated, would have covered a second season (the 2015 season) of Mr. Lutz's baseball services for the Tohoku Rakuten Golden Eagles (the "**2015 Season Proposal**").  While the negotiations were ongoing, Mr. Lutz moved back to the U.S.  Rakuten Baseball, Inc.'s communications concerning the 2015 Season Proposal while Mr. Lutz was back in the U.S. are limited to a handful of email communications between Mr. Sasaki and Mr. Lutz and a few phone calls from Mr. Sasaki to Mr. Lutz.  No one from Rakuten Baseball, Inc. ever traveled to Pennsylvania in connection with negotiating the 2015 Season Proposal.

9.      Under the 2015 Season Proposal, as discussed by Rakuten Baseball, Inc. and Mr. Lutz' agent, who was located in Los Angeles, not in Pennsylvania, Mr. Lutz again would have been required to live and work in Japan, and would not have been allowed to leave Japan during the term of the agreement without the team's approval.  The team would have provided Mr. Lutz with housing, a meal allowance, and medical care in Japan, and Mr. Lutz again would have been responsible for the costs of local Japanese transportation.  Again, the proposed governing law was Japanese law and the proposed exclusive venue for any disputes was in Tokyo.  The 2015 Season Proposal again would have subjected Mr. Lutz's proposed compensation to Japanese withholding, consumption, and other taxes.  It further proposed that the right to take and use photographs and video of Mr. Lutz again would be given to the team, other Japanese baseball teams and the Japanese Baseball League, and that any agreement that Mr. Lutz and Rakuten Baseball, Inc. might conclude would be subject to oversight and approval by the Japanese Baseball Commissioner.  As with the 2014 Season Contract, all performances and services by Mr. Lutz under the 2015 Season Proposal would have been provided in Japan (and potentially other Asian countries, depending on the team's potential success in championship games) if an agreement had been concluded.  None of Mr. Lutz' proposed services under the 2015 Season

Proposal would have been performed in Pennsylvania or anywhere else in the U.S.  Had the 2015

Season Proposal been consummated, Mr. Lutz would have provided no services to Rakuten

Baseball, Inc. in Pennsylvania or anywhere else in the U.S.  Any and all such services would

have been performed in Japan (or elsewhere in Asia, again depending on success in

championship games).  The parties never reached a final agreement, however, and Rakuten

Baseball, Inc. ended its negotiations with Mr. Lutz on December 24, 2014.

10.     Rakuten Baseball, Inc. made all of its decisions regarding the 2015 Season

Proposal from its headquarters in Sendai, Japan.

11.     All of the individuals at Rakuten Baseball, Inc. who were involved in negotiations

with Mr. Lutz concerning the 2015 Season Proposal reside in Japan.  None reside in

Pennsylvania or anywhere else in the U.S.  Specifically, all of the communications upon which

Mr. Lutz's claims are based were allegedly made by Rakuten Baseball, Inc. employees Akihito

Sasaki, Director of the Baseball Team Strategy Office, and Hiroshi Abei, the Executive Director

of Baseball Operations.  Both Messrs. Sasaki and Abei are employed by Rakuten Baseball, Inc.,

not Rakuten, Inc., and reside in Sendai, Japan.  Both employees had direct communications with

Mr. Lutz's agent, located in Los Angeles, California, but Mr. Sasaki was the only Rakuten

Baseball, Inc. employee who communicated directly with Mr. Lutz while Mr. Lutz was in

Pennsylvania.  Although Mr. Sasaki, Mr. Abei, and other Rakuten Baseball, Inc. employees

speak some English, they do not speak English well enough to testify in English and any

testimony for a U.S. proceeding would require translation or interpretation.

12.     All of the documents regarding these negotiations are maintained at Rakuten

Baseball, Inc.'s headquarters in Sendai, Japan.  None are maintained in Pennsylvania or

anywhere else in the U.S.  Most of the relevant documents are written in Japanese, including

internal documents concerning Rakuten Baseball, Inc.'s decision to terminate and reasons for

terminating its negotiations with Mr. Lutz.  Although communications with Mr. Lutz and his agents were in English, many of these communications and the documents communicated (such as the 2014 Season Contract and the 2015 Season Proposal) exist in both English and Japanese.

13.     In December 2014, Rakuten Baseball, Inc. decided to cease negotiations with Mr. Lutz for his services as a potential baseball player in Japan for the 2015 season.  All of the individuals at Rakuten Baseball, Inc. who were involved in that decision reside in Japan.  None reside in Pennsylvania or anywhere else in the U.S.  All of the documents regarding that decision are maintained at Rakuten Baseball, Inc.'s headquarters in Sendai, Japan.  None are maintained in Pennsylvania or anywhere else in the U.S.

### Hiroshi Mikitani

14.     Hiroshi Mikitani is the founder, CEO and Chairman of Rakuten, Inc.  His official title at Rakuten, Inc.'s subsidiary, Rakuten Baseball, Inc., is "Executive Director, Chairman, and Owner".  "Owner", however, has a different meaning in Japan than it would in the U.S.  "Owner" does not refer to actual ownership but to his status as a team representative.  The constitution of Japan's professional baseball league, Nippon Professional Baseball, defines "owner" as someone who represents the company that owns or controls the baseball team, and who is also an executive of the baseball team.  As the parent company of Rakuten Baseball, Inc., Rakuten, Inc. owns all shares of the team.

15.     Mr. Mikitani's role at Rakuten Baseball, Inc. is limited to:  (a) attending the Owners Meetings held by Nippon Professional Baseball; (b) attending Rakuten Baseball, Inc.'s board meeting every three months; and (c) overseeing governance of Rakuten Baseball, Inc. as the chief executive of Rakuten, Inc.  Mr. Mikitani is not involved in Rakuten Baseball, Inc.'s negotiations with its baseball or potential baseball players.

16.     Neither Mr. Mikitani nor Rakuten, Inc. are involved in the day-to-day operations of Rakuten Baseball, Inc.  Contrary to the allegations made in Mr. Lutz' Complaint, Mr. Mikitani does not own the Tohoku Rakuten Golden Eagles baseball team.  Contrary to the allegations made in Mr. Lutz' Complaint, Rakuten, Inc. does not operate either Rakuten Baseball, Inc. or the Tohoku Rakuten Golden Eagles baseball team.

17.     Mr. Mikitani does not use Rakuten Baseball, Inc. to shelter any personal assets, does not comingle his personal funds with those of Rakuten Baseball, Inc., does not siphon funds from Rakuten Baseball, Inc., and does not operate Rakuten Baseball, Inc. with his personal funds.  Although he was involved in the formation of Rakuten Baseball, Inc. as a subsidiary of Rakuten, Inc., Rakuten Baseball, Inc. was not formed to shield Mr. Mikitani from any liability.  Rakuten Baseball, Inc. consistently turns a profit and has never been insolvent.  Rakuten Baseball, Inc. was incorporated in good faith, observes all corporate formalities, and has been operating the Tohoku Rakuten Golden Eagles continuously since 2005.

## Pending Civil Litigation Against Zachary Lutz In Japan

18.     On November 21, 2017, Rakuten Baseball, Inc. filed a lawsuit in Sendai, Japan against Mr. Lutz, seeking declaratory relief with regard to its dispute with Mr. Lutz (the "**Japanese Lawsuit**").  The Japanese Lawsuit addresses the same issues and seeks to resolve the same claims raised by Mr. Lutz in the action pending in Pennsylvania.  A copy of an English translation of the Japanese Lawsuit is attached hereto as **EXHIBIT A**.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November _30_, 2017, at _____, Japan.

_____

YOZO TACHIBANA

DECLARATION OF YOZO TACHIBANA SUBMITTED ON BEHALF OF RAKUTEN BASEBALL, INC.

# EXHIBIT A

# COMPLAINT

November 21, 2017

To:        Sendai District Court, Civil Division

From:      Attorneys for Plaintiff:

              Attorney-at-Law, Yoshiro Masumoto

              Attorney-at-Law, Katsuyuki Inagaki

              Attorney-at-Law, Takehiro Kaneko

              Attorney-at-Law, Hiroyuki Danzuka

Plaintiff:    Rakuten Baseball, Inc.

            205-1 Nakake-cho, Miyagino-ku, Sendai-shi 983-0864

            Representative: Representative Director, Yozo Tachibana

Attorneys for Plaintiff:

              TMI Associates (place of service)

              23F Roppongi Hills Mori Tower

              6-10-1 Roppongi, Minato-ku, Tokyo 106-6123

              Tel: 03-6438-5511

              Fax: 03-6438-5522

              Attorney-at-Law, Yoshiro Masumoto

              Attorney-at-Law, Katsuyuki Inagaki

              Attorney-at-Law, Takehiro Kaneko

              Attorney-at-Law, Hiroyuki Danzuka

Defendant:   Zachary Lutz

            3281 Gehman Road, Barto, Berks County, PA, 19054

Case: Confirmation of Absence of Obligation

              Amount of case: 1,600,000 yen

              Amount of stamp duty: 13,000 yen

## OBJECT OF CLAIM

Plaintiff seeks judgment to the effect that:

1. Plaintiff does not bear any damage compensation obligation against Defendant in relation to the negotiation of a player contract between Plaintiff and Defendant for the 2015 Season (referring to the period from February 1, 2015 to November 30, 2015 of the Nippon Professional Baseball season; hereinafter the same);

2. Plaintiff does not bear any damage compensation obligation against Defendant in relation to Plaintiff's act of not removing Defendant from Plaintiff's Reserve List for the 2015 Season until January 5, 2015; and

3. court costs shall be borne by Defendant.

## STATEMENT OF CLAIM

### I.   Parties

### 1.   Plaintiff

Plaintiff is a *kabushiki kaisha* primarily engaged in the business of hosting baseball games, and owns the Tohoku Rakuten Golden Eagles ("**Rakuten Eagles**"), a professional baseball team that uses Kobo Park Miyagi (Location: 2-11-6 Miyagino, Miyagino-ku, Sendai-shi) as its home ground.

### 2.   Defendant

Defendant is a former professional baseball player who concluded a player contract with Plaintiff midway during the 2014 Season[1], and played for the Rakuten Eagles as a professional baseball player until the end of the 2014 Season.

### II.   Overview of Present Case

From around September 2014 to December 2014, while Defendant held negotiations ("**Negotiations**") with Plaintiff for concluding a player contract for the following season (2015 Season[2]) ("**New Contract**"), the parties could not reach an agreement to conclude such player contract.

---

[1] Referring to the period from February 1, 2014 to November 30, 2014 of the Nippon Professional Baseball season.
[2] Referring to the period from February 1, 2015 to November 30, 2015 of the Nippon Professional Baseball season.

2

The present case is a case where Defendant is asserting that Plaintiff committed a tort during the process of the Negotiations related to the New Contract and seeking damages against Plaintiff, whereas Plaintiff is requesting the confirmation of absence of such damage compensation obligation.

### III. Background up to Present Case

### 1. Player contract for 2014 Season

On June 15, 2014, Defendant concluded a player contract with Plaintiff for the 2014 Season with the effective term thereof ending at the end of November, and joined the Rakuten Eagles as a professional baseball player.

Nevertheless, on July 21, 2014, Defendant sustained a facture to his right thumb ("**Injury**"), and did not play in any games for the Rakuten Eagles for the remainder of the 2014 Season.

### 2. Negotiations for renewal of contract for 2015 Season

From around September 2014, Plaintiff commenced the Negotiations with Defendant, who underwent surgery to repair the Injury, for concluding the New Contract through Defendant's agent.

Nevertheless, Defendant's agent held off on responding to the contractual terms presented by Plaintiff, and time just elapsed without Plaintiff receiving any kind of specific counterproposal from Defendant's agent. Subsequently, in late November 2014, Defendant's agent contacted Plaintiff and made a request to the effect that Defendant wishes to include a special provision ("**Special Provision**") in the New Contract so that Defendant can return to the United States of America ("**U.S.**") during the 2015 Season, without having to the obtain the team's permission, to treat his injury.

Consequently, in the subsequent Negotiations, whether or not the Special Provision could be included in the New Contract, and the details thereof, became the primary matters that were negotiated. Because there was no previous case of including such special provision in a player contract, and since Defendant's request regarding the Special Provision in itself raised strong suspicion that Defendant had not yet recovered from the Injury, it was not easy for Plaintiff to accept the foregoing request. However, in early December 2014, Plaintiff sent a draft version of the New Contract, which included the Special Provision, to the Defendant's agent on the condition that Defendant submits to Plaintiff a doctor's medical report which sufficiently indicates that Defendant has recovered from the Injury.

3

Nevertheless, because the foregoing medical report indicating Defendant's recovery from the Injury was not submitted by Defendant to Plaintiff, Plaintiff had no choice but to determine that Defendant would not be able to adequately play baseball in the 2015 Season, and gave up on concluding the New Contract.

Consequently, on December 24, 2014, Plaintiff notified Defendant that it will discontinue the Negotiations.

### 3.    Filing of suit by Defendant

Due to the breakdown of the Negotiations, Defendant ultimately concluded a player contract for the 2015 Season with the Doosan Bears, a Korean professional baseball team. Furthermore, because Plaintiff had not received any kind of demand or request from Defendant from February 2015 onward, Plaintiff considered that this case had ended.

Nevertheless, on August 30, 2017, in which roughly two and a half years had elapsed from February 2015, Defendant suddenly filed a tort suit with the U.S. District Court for the Eastern District of Pennsylvania against Plaintiff and others on grounds that Plaintiff abandoned the Negotiations while raising Defendant's hopes for concluding the New Contract, and Defendant lost his opportunity to negotiate with other teams because Plaintiff failed to remove Defendant from the "Reserve List" during the period of Negotiations (**Plaintiff's Exhibit 1: Complaint**).

### IV.  Conclusion

In light of the background explained in Section III-2 above, it is evident that there is no fact that demonstrates Plaintiff's tort during the process leading up to the discontinuation of the Negotiations. Regardless, in light of the fact that Defendant initiated a damage suit against Plaintiff and others in the U.S., it could be said that the legal dispute between Plaintiff and Defendant has already been actualized. In consideration of the current situation described above, it could be said that there is a genuine need to reach a decision in Japan regarding the foregoing legal dispute between Plaintiff and Defendant.

Accordingly, Plaintiff hereby requests this court to confirm the absence of the obligations listed in the Object of Claim.

Means of Evidence

As per the Description of Evidence


Attached Documents


1.   Duplicate of this Complaint: 1 copy

2.   Plaintiff's Exhibits: 1 copy each

3.   Description of Evidence: 1 copy

4.   Certification of Qualification: 1 copy

5.   Power of Attorney: 1 copy