# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ZACHARY LUTZ,<br><br>                    Plaintiff,<br><br>          v.<br><br>RAKUTEN, INC., RAKUTEN BASEBALL, INC. and HIROSHI MIKITANI,<br><br>                    Defendants. | Civil Action No. 17- 03895<br><br>**DECLARATION OF NAOKI MIZUGUCHI SUBMITTED ON BEHALF OF RAKUTEN, INC. IN SUPPORT OF ITS RENEWED MOTION TO DISMISS**<br><br>[ELECTRONICALLY FILED] |

## DECLARATION OF NAOKI MIZUGUCHI SUBMITTED

## ON BEHALF OF DEFENDANT RAKUTEN, INC.

I, Naoki Mizuguchi, declare as follows:

1. I am the Chief Compliance Officer of Rakuten, Inc., a defendant in this lawsuit filed by Plaintiff Zachary Lutz against non-resident, Japanese defendants Rakuten, Inc. and Rakuten Baseball, Inc.[1] I am a Japanese citizen. I work and reside in Tokyo, Japan. I make this declaration based on my personal knowledge, my personal knowledge of the records available to me as they are kept in the ordinary course of business, information obtained from other Rakuten, Inc. employees upon whom I regularly rely in the ordinary course of business, and my general knowledge of the business practices of Rakuten, Inc. If called as a witness, I could and would competently testify thereto.

2. I submit this declaration in support of Rakuten, Inc.'s and Rakuten Baseball, Inc.'s *Renewed Motions To: (1) Dismiss For Lack Of Personal Jurisdiction Under Rule 12(b)(2); and (2) Dismiss For Failure To State A Claim Under Rule 12(b)(6).*

**I.**

## RAKUTEN, INC. DOES NOT HAVE ANY CONNECTION TO PENNSYLVANIA

**A.**   **Rakuten, Inc. Is A Japanese Corporation That Does Not Operate In Pennsylvania.**

3. Rakuten, Inc. is a Japanese corporation headquartered at 1-14-1 Tamagawa, Setagaya-ku, Tokyo 158-0094, Japan. It is a holding company that has, under its Japanese corporate umbrella, more than 70 businesses constituting its corporate family in approximately 30 countries and regions around the world. Those businesses engage in a wide variety of e-

---

[1] On January 11, 2019, Plaintiff Zachary Lutz voluntarily dismissed defendant Hiroshi Mikitani from this action. [ECF Docket No. 40.]

commerce, digital content, communications, financial technology, sports, investment, incubation, energy, and other services.

    4.    Rakuten, Inc.:

        a.    does not now have, and has never had, any offices, employees, or operations in the United States;

        b.    does not now conduct or operate, and has never conducted or operated, any business in Pennsylvania;

        c.    is not now licensed, and has never been licensed, to conduct business in Pennsylvania;

        d.    does not now have, and has never had, an agent for service of process in Pennsylvania;

        e.    does not now pay, and has never paid, property or any other taxes in Pennsylvania;

        f.    does not now collect, and has never collected, taxes from Pennsylvania residents;

        g.    is not now, and has never been, regulated by the laws or regulations of Pennsylvania;

        h.    does not now own or lease, and has never owned or leased, any offices or other real property in Pennsylvania;

        i.    does not now maintain, and has never maintained, corporate records in Pennsylvania;

        j.    does not now have, and has never had, any bank accounts in Pennsylvania;

k. does not now have, and has never had, any employees or officers in Pennsylvania;

l. does not now hold, and has never held, any director or shareholder meetings in Pennsylvania;

m. does not now have, and has never had, companies or subsidiaries conducting business activities in Pennsylvania on its behalf;

n. does not now have, and has never had, any direct, wholly owned subsidiaries operating in Pennsylvania;

o. does not now sell or provide, and has never sold or provided, products or services to Pennsylvania residents;

p. does not now place or purchase, and has never placed or purchased, any advertisements in Pennsylvania;

q. does not now generate, and has never generated, revenues in Pennsylvania;

r. does not report, and has never reported, financial results on its financial statements from any business activities it had in Pennsylvania, as there have been no such activities;

s. does not report, and has never reported, financial results on its financial statements from any business activities that any of its direct, wholly owned subsidiaries had in Pennsylvania, as there have been no such activities;

t. does not now have, and has never had, operations in Pennsylvania;

u. does not now regularly purchase, and has never regularly purchased, products, supplies, or services within Pennsylvania for use in Rakuten, Inc.'s business outside Pennsylvania;

v. with the exception of this lawsuit, has never been involved in any lawsuit in Pennsylvania; and

w. has never filed any administrative reports with any Pennsylvania agency or department.

5. Former named defendant Hiroshi Mikitani, Rakuten, Inc.'s CEO and Chairman, has not visited Pennsylvania at any time since 2000.

**B. Rakuten, Inc. Observes Corporate Formalities With Regard To All Affiliated Entities, And With Regard To Rakuten Baseball, Inc. In Particular.**

6. The more than 70 businesses constituting the corporate family under Rakuten, Inc.'s Japanese corporate umbrella are separate from Rakuten, Inc. and operate as separate, independent entities. Each maintains its own separate corporate formalities. Each:

a. holds its own shareholder meetings and board meetings;

b. maintains its own minutes;

c. files its own corporate records;

d. maintains its own separate bank accounts and offices; and

e. has adequate capital for its separate operations.

Rakuten, Inc. does not pay taxes on behalf of any of these entities. Rakuten, Inc. has no operational oversight concerning their operations or businesses.

7. Rakuten Baseball, Inc. is a Japanese corporation headquartered at 2-11-6 Miyagino, Miyagino-ku, Sendai, Miyagi 983-0045, Japan. It owns and operates the Tohoku

Rakuten Golden Eagles, a professional baseball team located in Sendai, Japan.  The Tohoku Rakuten Golden Eagles play in Japan's Pacific League, one of two professional baseball leagues in Nippon Professional Baseball in Japan.  The other teams in Japan's Pacific League are the Fighters in Sapporo, the Lions in Tokorozawa, the Marines in Chiba, the Buffaloes in Osaka, and the Hawks in Fukuoka.

8. Rakuten Baseball, Inc. is not a division of Rakuten, Inc.  While it is a direct, wholly owned subsidiary of Rakuten, Inc., it is a separate Japanese entity and operates as such.  Rakuten, Inc. has no operational oversight concerning Rakuten Baseball, Inc.'s operations, business, or negotiations with baseball team players.  Rakuten, Inc. does not get involved in Rakuten Baseball, Inc.'s negotiations with baseball team players, and had no involvement in any discussions with Plaintiff Zachary Lutz or in any of the negotiations between Rakuten Baseball, Inc. and Mr. Lutz's Los Angeles, California agents.

**C.**     **Rakuten Baseball, Inc. Is Not An Agent Of Rakuten, Inc.**

9. There is no agency relationship between Rakuten, Inc. and Rakuten Baseball, Inc.  Neither Rakuten Baseball, Inc. nor any employee of Rakuten Baseball, Inc. is, or has ever been, an agent of Rakuten, Inc.  Rakuten, Inc. has never stated or asserted that Rakuten Baseball, Inc., or any employee of Rakuten Baseball, Inc., could or would act on behalf of Rakuten, Inc. or bind Rakuten, Inc. in any way.  Rakuten Baseball, Inc. was not established to, and does not, engage in activities—namely owning and operating a professional baseball team—in which Rakuten, Inc. would have engaged but for the establishment of Rakuten Baseball, Inc.  Rakuten Baseball, Inc. does not act, and has never acted, as Rakuten, Inc.'s sales division, and does not perform, and has never performed, any other services that would be essential to Rakuten, Inc.'s operations as a

holding company, or that Rakuten, Inc. otherwise would have undertaken but for the establishment of Rakuten Baseball, Inc.

**D.     No Direct Subsidiary Of Rakuten, Inc. Has Operations In Pennsylvania.**

10.     Rakuten, Inc. has no direct, wholly owned subsidiaries operating in Pennsylvania. While there are members of the corporate family who might have some contact on occasion with individuals living in Pennsylvania, none of those entities are direct, wholly owned subsidiaries of Rakuten, Inc.  Instead, they are subsidiaries of other entities that might be one or more levels removed from the ultimate Japanese holding company, Rakuten, Inc.

11.     Rakuten, Inc. understands that Mr. Lutz has suggested that there is jurisdiction over Rakuten, Inc. in Pennsylvania based on the actions of Rakuten Commerce LLC.  Rakuten Commerce LLC ( dba "Rakuten.com"), however, is a Delaware limited liability company headquartered in San Mateo, California.  It is not a direct, wholly owned subsidiary of Rakuten, Inc.  Rakuten, Inc. has no operational oversight concerning Rakuten Commerce LLC's operations or business.  Rakuten Commerce LLC provides an online platform where third-party sellers can market their products to consumers.  Any such products that might be sold are sold by those third-party sellers—not Rakuten Commerce LLC.  Some such potential consumers of such third-party sellers' products might be living in Pennsylvania but Rakuten, Inc. understands that Rakuten Commerce LLC does not specifically target Pennsylvania residents or otherwise direct its Internet activities at the Commonwealth of Pennsylvania.

12.     Rakuten, Inc. also understands that Mr. Lutz has suggested that there is jurisdiction over Rakuten, Inc. in Pennsylvania based on certain statements posted on the website of Rakuten Marketing LLC (https://rakutenmarketing.com).  Rakuten Marketing LLC, however,

is a <u>Delaware limited liability company</u> headquartered in <u>New York, New York</u>. It is not a direct, wholly owned subsidiary of Rakuten, Inc. Rakuten, Inc:

    a.    is not involved in, let alone in control of, Rakuten Marketing LLC's activities;

    b.    is not aware of anything done by Rakuten Marketing LLC that is directed at Pennsylvania;

    c.    is not aware of any business activities that Rakuten Marketing LLC has in Pennsylvania;

    d.    is informed that Rakuten Marketing LLC has no offices or employees working in Pennsylvania; and

    e.    is not aware of, much less responsible for, what Rakuten Marketing LLC might have meant or intended by statements included on a website owned and operated by Rakuten Marketing LLC.

13.    Rakuten, Inc. also understands that Mr. Lutz has suggested that there is jurisdiction over Rakuten, Inc. based on a commercial for Ebates Inc. that Mr. Lutz's counsel claims to have seen while watching television at home in Pennsylvania. Ebates Inc., however, is a <u>Delaware corporation</u> headquartered in <u>San Francisco, California</u>. It was founded in 1998 and became a Rakuten-affiliated company in 2014. It is not a direct, wholly owned subsidiary of Rakuten, Inc. Ebates Inc. operates a membership-based online cash-back website. Rakuten, Inc. is informed that Ebates, Inc. does not have, and has never had, any offices, employees, or operations in Pennsylvania.

14.    The only presence that any member of the Rakuten family of companies has in Pennsylvania is one warehouse with 20 employees located in Scranton. That warehouse,

however, is operated by Webgistix Corporation, a <u>Nevada corporation</u> headquartered in <u>Las Vegas, Nevada</u>.  It was founded in 2001 and became a Rakuten-affiliated company in 2013. Webgistix Corporation provides order transshipment and fulfillment services for e-commerce retailers.

15. Webgistix Corporation has transshipment and fulfillment warehouses in:  Olean, New York; Las Vegas, Nevada; Atlanta, Georgia; Reno, Nevada; Scranton, Pennsylvania; Newark, New Jersey; Chicago, Illinois; and Austin, Texas.  The Scranton warehouse has only 20 employees.  Neither Webgistix Corporation nor its transshipment and fulfillment warehouse in Scranton has anything to do with baseball, Rakuten Baseball, Inc., Mr. Lutz, or Mr. Lutz's claims in this lawsuit arising from discussions about playing baseball for the Tohoku Rakuten Golden Eagles baseball team in Sendai, Japan for the 2015 season.  No revenues earned by Webgistix Corporation are allocated to Rakuten, Inc. (a Japanese corporation and holding company).

**E.     The Rakuten "Ecosystem".**

16. Rakuten, Inc. also understands that Mr. Lutz has suggested that there is jurisdiction over Rakuten, Inc. in Pennsylvania based on some sort of "ecosystem" theory. While Rakuten, Inc. does describe a "Rakuten Ecosystem" on its website and in other communications, the "ecosystem" is nothing more than the name for a concept that is common across and describes virtually every large organization with a holding company at the top (such as Rakuten, Inc. here) and many members of a corporate "family" below, which then tries to integrate branding, internal communications, data, and interactions with each other and with consumers, across and among that corporate "family".  Rakuten's "ecosystem" concept is primarily focused on e-commerce interactions in Japan.

17.     Rakuten, Inc.'s "ecosystem" concept is not a tangible, or even intangible, thing that is capable of "functioning" or "operating" in Pennsylvania, or in any other limited geographic location for that matter.  It is not a concept that is specifically focused on or targeted at Pennsylvania or Pennsylvania residents.  It is merely the name for a concept describing how numerous members of a large corporate family are organized under a holding company parent and then might share brands, communications, data, and interactions with each other and with consumers, and is a concept that is primarily focused on e-commerce interactions in Japan.  It has nothing to do with:

        a.    baseball;

        b.    Rakuten Baseball, Inc.; or

        c.    Rakuten Baseball, Inc.'s negotiations with players or prospective players for Rakuten Baseball, Inc.'s Tohoku Rakuten Golden Eagles professional baseball team in Sendai, Japan.

18.     Presently, access to services across the Rakuten "ecosystem" is primarily focused on people located in Japan.  Such access has not yet been significantly implemented outside Japan, including in the United States.  The following is one example of a statement on Rakuten, Inc.'s website describing such an "ecosystem":

**Our Strengths**

Rakuten Group services have more than **1.2 billion** members.
This is what makes us strong.

**An ecosystem of services with membership at the core**

> Rakuten Group's broad range of online and off-line services includes e-commerce, travel, FinTech, digital contents and communications, as well as credit cards, banking, securities, insurance, electronic money and even professional sports. By linking these many diverse services through a common membership and loyalty program, we have created a unique Rakuten Ecosystem.
>
> By using these services – whether shopping, streaming content, banking, or other – members can earn Rakuten Super Points, which can then be used to enjoy other services. As it enables and encourages user engagement across multiple platforms and services, the Rakuten Ecosystem is a unique strength that minimizes customer acquisition costs and maximizes the lifetime value of each Rakuten member to the Group and drives growth of gross transaction value (GTV). ==Close to 95 million registered members based in Japan can now easily access services across the Ecosystem using a single Rakuten member ID. We look forward to expanding the Ecosystem to encompass all of our more than 1.2 billion global users.==

*See* https://global.rakuten.com/corp/about/index.html#strengths (accessed on January 17, 2019) (emphasis added). As noted in the last two sentences of that text, access to services across the Rakuten "ecosystem" is primarily focused on people located in Japan. *See also* the announcement of a Rakuten, Inc. Board of Directors meetings on December 14, 2017 concerning entry into the Mobile Network Operator business, produced to Mr. Lutz as document number RI001267-1269. (A true and correct copy is attached hereto as **EXHIBIT A**.) On the second page of that announcement, Rakuten, Inc. states:

> "==In Japan==, the [Rakuten] Group has built a strong and unique ==ecosystem== encompassing both online and offline services, with nearly 100 million Rakuten ID's . . . ."

## II.

## Rakuten, Inc. Did Not Participate In And Was Not Otherwise Involved In Rakuten Baseball, Inc.'s Negotiations With Mr. Lutz

19.  Rakuten, Inc. understands that Mr. Lutz seeks to hold Rakuten, Inc. liable for damages he claims to have incurred as a result of a failure to consummate a contract with

Rakuten Baseball, Inc. to play for the Tohoku Rakuten Golden Eagles baseball team in Sendai, Japan for the team's 2015 baseball season.

20.     Neither Rakuten, Inc. nor its CEO and Chairman, Hiroshi Mikitani, were involved in any discussions with Mr. Lutz or in any of the negotiations between Rakuten Baseball, Inc. and Mr. Lutz's Los Angeles, California agents.  Contrary to the allegations previously made by Mr. Lutz in this lawsuit, Mr. Mikitani does not own or operate the Tohoku Rakuten Golden Eagles baseball team, does not operate Rakuten Baseball, Inc., and had no involvement in any of Rakuten Baseball, Inc.'s negotiations concerning Mr. Lutz.

21.     Because Rakuten Baseball, Inc. is a direct, wholly owned subsidiary of Rakuten, Inc., Mr. Mikitani is on Rakuten Baseball, Inc.'s board and as a result holds a Rakuten Baseball, Inc. title—"Executive Director, Chairman, and Owner".  "Owner" as used in that title, however, does not mean that Mr. Mikitani owns Rakuten Baseball, Inc. or its Tohoku Rakuten Golden Eagles baseball team.  "Owner" has a different meaning in Japan than it would in the United States.  In Japan, it does not refer to actual ownership.  Instead, it merely refers to Mr. Mikitani's status as a team representative by virtue of the fact that Rakuten, Inc. is Rakuten Baseball, Inc.'s parent.  The constitution of Japan's professional baseball league, Nippon Professional Baseball, defines "owner" as someone who represents the company that owns or controls the baseball team, and who also is an executive of the company operating the team.  As the parent company of Rakuten Baseball, Inc., Rakuten, Inc. owns all the shares of Rakuten Baseball, Inc.

22.     As a Rakuten Baseball, Inc. board member, Mr. Mikitani is not involved in the day-to-day operations of Rakuten Baseball, Inc. or its baseball team, nor in negotiations for baseball players to play on the team.  His role at Rakuten Baseball, Inc. is limited to:

-13-

      a.     attending Owners Meetings held by Nippon Professional Baseball, Japan's professional baseball league;

      b.     attending Rakuten Baseball, Inc.'s board meeting once a quarter; and

      c.     overseeing governance of Rakuten Baseball, Inc. as the CEO and Chairman of Rakuten, Inc.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 22, 2019, at Tokyo, Japan.

_____
NAOKI MIZUGUCHI

**EXHIBIT A TO NAOKI MIZUGUCHI DECLARATION**

December 14, 2017

Company name    Rakuten, Inc.

Representative    Hiroshi Mikitani

Chairman and CEO

(Stock Code: 4755

Tokyo Stock Exchange First Section)

## Rakuten Announces Intent to Enter into Mobile Network Operator (MNO) Business

A resolution was reached at the Rakuten, Inc. Board of Directors meeting held today that Rakuten, Inc. (hereinafter the "Company") intends to enter into the Mobile Network Operator (MNO) business.

1. Application for Frequency Band Allocation

   A resolution was reached at the Rakuten, Inc. Board of Directors meeting held today, that the Company would apply to the Ministry of Internal Affairs and Communications (hereinafter the "MIC") for frequency band allocation for the 4th generation mobile communications system (4G) (1.7 GHz band and 3.4 GHz band[1]), once application registration opens. If the application for the frequency band allocation is approved by the MIC, Rakuten Group (hereinafter the "Group") will launch a new MNO business.

   In Japan, the proportion of household spending taken up by telecommunication expenses is rising each year, and the reduction of the financial burden on consumers of mobile phones and other communications expenses is often cited to be a major social issue[2]. In addition, as the current MNO market is criticized as a coordinated oligopoly among existing operators[3], the government is in the middle of a thorough industry review aimed at ensuring fair competition and the protection of consumer interests[4].

   Under such circumstances, the MIC now recognizes that it is essential to expand the allocated frequency bands in response to the constant increase in mobile phone traffic, and is considering the additional allocation of frequencies for the 4G. The Company has made a decision today to apply for

---

[1] On November 17 of this year, the Ministry of Internal Affairs and Communications announced the "Proposal of Guidelines on the Establishment of Base Stations for the Promotion of the Fourth Generation Mobile Communications Systems" and is currently in the process to invite public comments.

[2] Cabinet Office, Government of Japan: Council on Economic and Fiscal Policy (September 11, 2015)

[3] The Ministry of Internal Affairs and Communications: Information and Communications Council: Report from the Information and Communications Council on "Information and Communications Policies Expected toward the 2020's: For Further Dissemination and Development of the World-leading Information and Communications Infrastructure" (December 18, 2014)

[4] The Ministry of Internal Affairs and Communications: Information and Communications Council 2020-ICT Infrastructure Policy Task Force

the additionally allocated 4G frequencies.

If the Group's application for the above frequency allocation is approved, the Group's entry into the current MNO market will make the market more competitive and lead to improvements in efficiency. As a result, the Group will be ideally positioned to provide affordable and easy-to-use mobile communications services, as well as maximize the benefits to consumers and society as a whole.

The Group has worked to build a membership base of more than 1.2 billion users around the world and offers a variety of services including e-commerce, online travel reservations, credit cards, online banking, online securities, messaging applications, and payment services, with Big Data at the core. In Japan, the Group has built a strong and unique ecosystem encompassing both online and offline services, with nearly 100 million Rakuten ID's, and the cumulative number of Rakuten Super Points issued to-date already exceeding JPY 1 trillion.

In recent years, the user shift to mobile has steadily advanced. While transactions via mobile apps already account for over 60% of the transaction volume on Rakuten Ichiba, growth in transactions through mobile devices continues across Rakuten services. There is no doubt that mobile devices are the most important user touchpoint for the expansion of existing services and new service development. With this in mind, the Company launched an MVNO (Mobile Virtual Network Operator) business under the Rakuten Mobile brand in October 2014.

Rakuten Mobile has been positively received by subscribers for a range of unique initiatives, including its compelling price offerings, diverse device lineup, the expansion of its offline stores, and the acceptance of Rakuten Super Points as a payment method. As a result, the number of Rakuten Mobile subscribers now exceeds 1.4 million, putting the company in the position of MVNO industry leader, with top market share.

If the Group is successful in its application to enter into the MNO business, this launch will provide the Group with a new engine for further growth, and allow the Group to become one of the few companies in the world that can provide a comprehensive package of services in E-commerce, FinTech, digital content, and mobile communications. By combining its customer base in Japan, the Rakuten Super Points loyalty program and its know-how in the mobile communications business cultivated through its MVNO business, the Group will be ideally positioned to offer its subscribers affordable and easy-to-use mobile communications packages, along with online shopping, streaming services, video advertisement, and innovative payment methods. The Group will continue to pursue synergies across its businesses to the fullest and to promote the businesses together as a "Global Innovation Company" that will benefit society as a whole.

2. Proposed plan for the new MNO business
   (1) Entity in charge of the business

    A new entity is planned to be established.

(2) Service start period

The service is scheduled to start in 2019.

(3) Target number of subscribers

The business will aim to acquire at least 15 million subscribers.

(4) Procurement of funds

The Group will procure funds for capital investment, including the installation of base stations. The Group estimates the maximum amount of fund procurement required for this business to be approximately JPY 200 billion at the start of the service in 2019, and a maximum of JPY 600 billion in 2025. We expect the amount of debt to gradually decease thereafter. The Company and the newly established entity will be the financing entity, and the method of funding is planned to be by interest-bearing debt, such as bank borrowing.

Details such as the financial impact on the Group's business performance are currently under review. Depending on the status of progress on this application, the Group will disclose in a timely and appropriate manner.

3. Schedule

(Reference) Schedule for frequency allocation published by the MIC

| | |
|---|---|
| November 17, 2017 | Announcement of draft establishment guidelines |
| December 18, 2017 | End of period to invite public comments |
| End of December 2017 to January 2018 | Period for consultation and reporting to the Radio Regulatory Council |
| January 2018 | Notification of final establishment guidelines |
| January to February 2018 | Applications for approval/accreditation to be lodged |
| End of March 2018 | Period for consultation and reporting to the Radio Regulatory Council |
| End of March 2018 | Approval/accreditation of establishment plans (frequency allocation) |

**CERTIFICATE OF SERVICE**

I, Valerie E. Alter, hereby certify that on the 25th day of January 2019, the foregoing document was filed electronically, is available for viewing and downloading from the CM/ECF System, and has been served via the Court's electronic filing service on all counsel of record.

    */s/ Valerie E. Alter*

*Counsel for Defendants Rakuten, Inc.
and Rakuten baseball, Inc.*